[Crim. No. 2191.   Third Dist.   Aug. 22, 1950.]

THE PEOPLE, Respondent, v. ERNEST POWELL,
Appellant.

Martin J. Jarvis for Appellant.

Fred N. Howser, Attorney General, and Gail A. Strader,
Deputy Attorney General, for Respondent.

VAN DYKE, J.—The appellant, Ernest Powell, and his brother Harold were jointly accused by information in two counts charging violation of Penal Code, section 148. That section makes it a crime for anyone to wilfully resist, delay or obstruct any public officer in the discharge or attempt to discharge any duty of his office. By count I the two brothers were charged as having committed the crime with respect to one George Wagner, and by count II the same charge was made with respect to one Rudy Schinkel, both of whom were police officers. The cause was tried to a jury which returned verdicts of not guilty as to Harold Powell on both counts. As to Ernest Powell the jury found him guilty as to count II, but failed to agree as to count I. Ernest Powell moved for a new trial which was denied by the court and after judgment was pronounced he took this appeal from the order denying his motion for a new trial and from the judgment.

The testimony produced at the trial was sharply in conflict on many matters, but under the well-known rule we are to take the facts as impliedly found by the jury, disregarding conflicting testimony which favored the appellant. So considered, the record shows the following: In the early morning hours of Sunday, April 17, 1949, the two police officers arrived at the Petaluma Café in Petaluma in answer to a police radio call regarding a disturbance at the café. Before they had arrived an altercation had taken place between two men in the café, but this altercation had died down by the time they reached the scene. There was a goodly number of people in the café and as the officers entered two women were then engaged in a second altercation. One of the women was making threatening gestures toward the other and Officer Wagner moved in to separate the contestants, at which time the other woman struck a blow, felling her antagonist. Wagner picked up this woman and, after stating she was under arrest, took her to the police car and placed her in it. Officer Schinkel took hold of another woman who seemed to be participating in the affray, and, following Officer Wagner, placed her in the car with Wagner's prisoner. He then observed that Officer Wagner had been struck by a bystander, later ascertained to be appellant, and he pulled appellant away from Wagner. He then started to return to the café, and as he turned away appellant struck him, knocking him partially to the ground. Appellant then grabbed the officer's tie, pulled it around to his back, and the two men scuffled around for some time, until two other officers arrived and the alterca-

tion ended. Wagner and Schinkel were in uniform and wore badges. Appellant had been in the café when the first altercation started, was there when the officers entered, was in a position to observe what occurred and followed Wagner and his prisoner to the car. The jury were justified in finding that he knew the officers were there for the purpose of quelling the disturbance and that they were so engaged at the very moment when he struck Officer Schinkel and continued to scuffle with him, thus, for the time being at least, impeding him in the performance of his duty. There was a considerable crowd at the location of the trouble. They were "milling around" and a general state of excitement prevailed. The situation was plainly one where the soothing presence of uniformed peace officers was desirable.

The jury deliberated over their verdicts for some time and on several occasions were called into court and questioned as to their progress in reaching verdicts. When first called into court the jury stated that they had arrived at a verdict as to one defendant, but as to the other they had not. They were sent back for further deliberations and after some time were again called before the court, took their places in the box, and the foreman told the court it did not seem possible that the jury could agree as to the charges against one of the defendants, but that they had arrived at a verdict as to the charges against the other. The court then said: "I think I will discharge the jury as to the other defendant and you may hand the verdict you have agreed upon to the clerk." The court then stated that as to the matters concerning which the jury had not agreed it considered that they had made a sincere effort, but would ask if there were any of the jurors in the box standing in the majority who thought there was reasonable possibility of reaching a verdict as to such matters. There was no response from the jury box. The court then stated that apparently it would be impossible for the jury to reach a verdict and that therefore the verdict which had been agreed upon would be read and recorded. This was done and the court then said: "In respect to the issues as to the other defendant in this case, this jury will be discharged as unable to arrive at a verdict." The court then requested that the unused forms of verdict be handed to the clerk, and the foreman then said: "What do we do with this, Your Honor? I have one signed here. Shall I destroy that one?" The court said: "Yes, if it is not voted or agreed upon." The foreman replied: "This one has been voted on but it is only on one count." The court

thereupon announced its intention to inquire further into the matter and since it appeared there might be an agreement on some issues the court would rescind and revoke what had been said about there being a deadlock as to issues outside the verdict that had been received. Thereupon the following occurred: The Court: "Now, as to the defendant Ernest Powell in this case, have you agreed on a verdict, ladies and gentlemen, as to either count of the information? Foreman: Yes, Your Honor. The Court: Now, again, have you agreed as to the defendant Ernest Powell, as to the state of his guilt or innocence on one count? Foreman: Yes, Your Honor. The Court: As contained in the information? Foreman: That's right, Your Honor." The court then instructed the foreman to hand the verdict as to Ernest Powell to the clerk. It was then read and by that verdict the jury found Ernest Powell guilty of the crime charged in count II of the information, that is, the resisting and obstructing of Officer Schinkel. At the request of Ernest Powell, through his counsel, the jury was polled and it appeared that the verdict was unanimous. The court then again asked the jury if they had been unable to agree on count I with respect to Ernest Powell and was informed they had so failed to agree and the court thereupon caused the one verdict as to Ernest Powell to be recorded and discharged the jury. During all the time the foregoing was transpiring the jury were in the box and under the control of the court. They had not separated nor been permitted to leave the box.

Appellant Ernest Powell first contends that the verdict rendered against him was void because received after the jury had been discharged. In support of his contention he cites *People* v. *Lee Yune Chong*, 94 Cal. 379 [29 P. 776], and other cases, but the situations under which the verdicts successfully attacked in those cases were received differed materially from the situation in the case before us. For instance, in the Chong case the jury had left the box, had separated, had engaged in conversation with various persons, deeming they had been discharged and might therefore discuss the case, and it was held under such circumstances reversible error had been committed in thereafter reassembling them and proceeding to receive and record a verdict. ▮ While it is true here that the court, laboring under the belief that the jury had not agreed on any verdict as to appellant, preliminarily announced its intention to discharge them, nevertheless the error was discovered before they had been permitted to leave the box and

the court was therefore fully justified in rectifying, and, indeed, in the performance of its duties was required to rectify, the misunderstanding and receive the verdict which the jury had unanimously agreed upon. It often happens, due to the reluctance of jury members to speak out, that such misunderstanding as existed here will arise, and a trial court would be remiss in its duties if, before it lost control of a jury, it discovered that such a situation had developed and did not correct it. A fair interpretation of what occurred impels the conclusion that there had, in fact, been here no such discharge of the jury as would prohibit the court from receiving its verdict as to appellant. We find no error in the court's procedure upon this point.

Appellant next contends that the verdict as to him was inconsistent with the acquittal of his brother on both counts and with the failure of the jury to agree on a verdict with respect to count I. We think it is unnecessary to follow appellant in his argument, although we have read his briefs with care. We think appellant misconceives the situation. As has been noted, the scene of action was a liquor-dispensing café; the hour was late and a goodly crowd had gathered; some tempers were high; insults had been exchanged; two fights had occurred, and, as some witnesses put it, the crowd was "milling around." Peace officers arriving on call at such a time and place and under such circumstances are continuously in the performance of their duty. A part of that duty consists in moving about among those present, arresting active disturbers of the peace, if such there be, and as to others letting their mere presence have its salutary effect. Anyone who then physically attacks one of them obstructs him in the performance of his duty.

■ There is no necessary inconsistency in the jury having held appellant on one count while disagreeing as to the other. The evidence was sharply conflicting and some of them may have believed him and others who testified that Wagner made an unjustifiable attack upon him and had been unjustifiably rough in handling the woman he arrested. Others may have believed the opposing testimony that Wagner was struck by appellant while properly and lawfully going about his work as a peace officer. And on the other hand the jury may all have believed that his subsequent attack on Schinkel was an unprovoked and vicious assault done with obstructive purpose.

■ Neither is there anything necessarily inconsistent in the jury's having held appellant as to one count while freeing

his brother Harold as to both. Here again, concerning the actions of Harold, the evidence was in conflict and the jury may have concluded that he believed from what he saw that the officers were acting without the law and that he lacked the necessary intent to impede or obstruct them in the performance of duty. All these matters were for the jury. ■ And even if it could be said that they ought to have convicted Harold and appellant on all counts and did not do so, it is still something of which appellant cannot complain. As for him the question is whether or not the conviction which the jury did impose upon him is supported by substantial evidence. We hold that it was.

The judgment and the order denying motion for new trial are affirmed.

Peek, J., and Adams, P. J., concurred.

A petition for a rehearing was denied September 6, 1950, and appellant's petition for a hearing by the Supreme Court was denied September 21, 1950.