[No. B001161. Second Dist., Div. Four. May 15, 1984.]

THE PEOPLE, Plaintiff and Respondent, v.
SAMUEL PAUL THORNTON, Defendant and Appellant.

**COUNSEL**

Edward H. Smith, under appointment by the Court of Appeal, for Defendant and Appellant.

John K. Van de Kamp, Attorney General, Edward T. Fogel, Jr., and John R. Gorey, Deputy Attorneys General, for Plaintiff and Respondent.

## OPINION

## RUDOF, J.*—

### STATEMENT OF THE CASE

In an information filed by the District Attorney of Los Angeles County, Samuel Paul Thornton (herein appellant) was charged with possession for purposes of sale of a controlled substance, to wit, phencyclidine, in violation of Health and Safety Code section 11378.5. He was found not guilty of the principal offense and appeals from the judgment of conviction of the lesser included offense of possession of a controlled substance in violation of Health and Safety Code section 11377, subdivision (a).

### STATEMENT OF FACTS

The facts which form the basis of this appeal are alarmingly simple. They concern only the events immediately preceding and subsequent to the jury's return from deliberations, and involve a question of the proper reconvening of a jury.

The jury had been given three verdict forms: Guilty of possession for sale, not guilty of possession for sale, and guilty of the lesser included offense of simple possession. Upon returning from deliberations, they brought all three forms back into open court. Two of the forms were dated and signed, i.e., not guilty of the charged offense, and guilty of the lesser included offense.

The following colloquy then took place:

"THE COURT:[1] People of the State of California versus Thornton.

"Let the record show defendant is present with counsel. Each of the jurors is in their respective positions in the box.

"Who is the foreman or forewoman?

"JUROR LANCE: I am, Your Honor.

"THE COURT: That is Miss Lance?

---

*Assigned by the Chairperson of the Judicial Council.

[1]"THE COURT" on this occasion was a colleague of the judge who had presided over the trial but who was unable to be present for the return of the verdict.

"Juror Lance: Yes.

"The Court: Has the jury reached a verdict?

"Juror Lance: Yes, it has, Your Honor.

"The Court: Would you hand all the jury—*all the forms* to the bailiff, *including those signed and not signed.*

"Clerk will read the verdict.

"The Clerk: Title of court and cause: 'We, the jury in the above-entitled action, find the defendant, Samuel Paul Thornton, not guilty of possession of a controlled substance for sale, to wit, phencyclidine, as charged in Count 1 of the information.

"'This 20th day of June, 1983.

"'Peggy Lance, Foreman.'

"Ladies and gentlemen of the jury, is this your verdict, so say you one, so say you all?

"(The jurors answered collectively in the affirmative.)

"The Court: Any request to poll the jury?

"Mr. Yamamoto: No, Your Honor.

"Mr. Dawson: No.

"The Court: No request to poll the jury, the court is going to enter the verdict as read.

"Any matter to come before the court before the jury is discharged?

"Mr. Dawson: Not by the People.

"Mr. Yamamoto: No, Your Honor.

"The Court: All right.

"Ladies and gentlemen of the jury, we will excuse you. Thank you very, very much for your service. I certainly appreciate your valuable contribution to our society." (Italics added.)

The court then proceeded to excuse the jury and they left.

Thus, through what appears to be an inadvertence on the part of the judge or clerk, the not guilty verdict as to the charged offense was the only verdict form which was read to the jury in open court, acknowledged by them to be their verdict and recorded before the jury was discharged. *There was no reading, acknowledgment or recordation of the verdict form on the lesser offense.*

That afternoon, the court clerk noticed that the not guilty verdict form was not the only one which the jury foreperson had dated and signed. He notified the presiding trial judge, who in turn met with all counsel. The judge, over defense counsel's objection, ordered the jury to reassemble the next morning.

Upon reassemblance of the jury, the court purported to take the verdict on the lesser included offense as follows:

"THE COURT: People of the State of California versus Samuel Paul Thornton.

"Let the record reflect that defendant and counsel are present; that all 12 jurors and two alternates are present.

"Just in way of explanation, ladies and gentlemen, I was called away on business yesterday, and Judge . . . agreed to take the verdict, your verdict. This is a common practice, not all that common, but one judge frequently substitutes for another judge in taking a verdict.

"*Judge . . . apparently through inadvertence did not read all the verdict forms, and so the only verdict recorded was one of the verdict forms signed by you.*

"*The defendant has a right to have the jury polled as to whether or not that was their verdict. Because Judge . . . only read one verdict, he found it unnecessary to poll the jury.*

"*So I asked you to come back so we could poll you as to whether or not these are your verdicts.*

"*I'm going to order the clerk to record the verdicts, and I'm going to ask the clerk to read the verdicts as recorded.*

"THE CLERK: Title of court and cause: 'We, the jury in the above-entitled action, *find the defendant,* Samuel Paul Thornton, *guilty of possession of a*

*controlled substance,* to wit, phencyclidine, in violation of section 11377, subdivision a, Health and Safety Code, a felony, *a lesser but necessarily included offense than that charged in count 1* of the information.

" 'This 20th day of June, 1983.

" 'Peggy Lance, Foreman.'

"Title of court and cause: 'We, the jury in the above-entitled action, *find the defendant,* Samuel Paul Thornton, *not guilty of possession of a controlled substance for sale,* to wit, phencyclidine, *as charged in count 1 of the information,* section 11378.5, Health and Safety Code.

" 'This 20th day of June, 1983.

" 'Peggy Lance, Foreman.'

"THE COURT: Ladies and gentlemen of the jury, is this your verdict, so say you one, so say you all?" (The jurors answered collectively in the affirmative.)

"THE COURT: All right.

"Would you poll the jury as to their finding as to the lesser included offense."

The clerk then called the names of all the jurors and they each answered, "Yes." Then the court stated to the clerk, "Would you poll them as to their finding of not guilty as to the greater offense [*sic*] of 11378.5." Each juror answered, "Yes" to the clerk's inquiry and finally the court stated as follows:

"THE COURT: I want to apologize to all jurors for having you come back. I very much regret the inconvenience to you and I want to tell you that I really very much appreciate your consideration in this case.

"You may be excused."

In a subsequent conference with counsel, the court stated, "whether [reconvening the jury] was an act without jurisdiction, I don't know."

ISSUE

The issue is whether the court erred in reconvening the jury the day after it was discharged, and if so, whether the signed and dated verdict form as to the lesser included offense can be accorded any legal effect.

## Discussion

### I

Penal Code section 1164 provides as follows: "When the verdict given is such as the court may receive, the clerk, or if there is no clerk, the judge or justice, must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact must be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case."

Also relevant to this case is Penal Code section 1149: "When the jury appear they must be asked by the Court, or Clerk, whether they have agreed upon their verdict, and if the foreman answers in the affirmative, they must, on being required, declare the same."

The problem here is novel. Our research reveals a dearth of authority on the ability of a trial court to reconvene a discharged jury upon discovery of procedural irregularities under Penal Code sections 1164 and 1149. We have been unable to find any case the facts of which parallel those at bench.

Before reviewing the cases that do offer some guidance, we must note that we are not dealing here with juror error. Jurors are not technicians in the law. Here, they performed all that was required of them by deliberating, submitting to the court the three verdict forms they had been given, and answering all inquiries directed to them. The proper implementation of the verdict reading and recording pursuant to the requirements of Penal Code section 1164 and 1149 is the exclusive province of the trial court, not the jury. In what sometimes appears as a sterile atmosphere in the courtroom, it would be too much to require the jury to know if and when they should speak up. For all appellant's jury knew, the reading of but one verdict form was all that was necessary.

Turning to the case law, one of the earliest cases on reconvening juries after discharge is *People* v. *Lee Yune Chong,* (1892) 94 Cal. 379 [29 P. 776]. In *Chong,* the jury returned a verdict which found the defendant guilty of murder but which did not, as required then and now, fix the degree. The verdict was declared and recorded, and the jury discharged. Shortly thereafter, the trial judge reconvened the jury for purposes of deciding on the degree, and upon deliberation the jury brought in a verdict of first degree.

On appeal the Supreme Court held: "It is quite clear that all the proceedings by which the court reassembled the persons who had constituted the jury, and instructed them to find another verdict, and the so-called second

verdict itself, were nullities. 'With the assent of the jury to the verdict as recorded, their functions with respect to the case cease, and the trial is closed'; and 'after the verdict is received and the jury discharged, . . . . the control of the jury and of the court over such verdict is at an end. The court cannot alter it, nor can the jury be called to alter or amend it. As well might any other twelve men be called to alter it as the men who were jurors. The office of a juror is discharged upon the acceptance of his verdict by the court.' [Citations.]" (*People* v. *Lee Yune Chong, supra,* 94 Cal. at pp. 384-385.)

Further, finding the only "real verdict" to be the one rendered prior to discharge, the court added that "[t]he case stands . . . as though there had been no attempt to revive the defunct jury, or to change the real verdict." (*Id.,* at pp. 385-386.)

Subsequent cases appear to agree that any attempts to correct mistakes or improprieties in the verdict must be made before " 'the control of the jury and of the court over such verdict is at an end.' " (Cf. *Chong, supra,* 94 Cal. at p. 385.) (*People* v. *Grider* (1966) 246 Cal.App.2d 149 [54 Cal.Rptr. 497]; *People* v. *Romero* (1982) 31 Cal.3d 685 [183 Cal.Rptr. 663, 646 P.2d 824].)

In *Grider,* the jury was discharged after a verdict form of guilty of second degree robbery was signed by the foreperson, read by the clerk and acknowledged by the jury to be their verdict. Nine minutes after the discharge, the jury was reconvened upon the discovery that they had unanimously voted for first degree robbery and had signed and acknowledged the second degree verdict form by mistake. In affirming the judgment of second degree robbery and reversing that of first degree robbery, the Court of Appeal stated: "So far as the jury was concerned, their verdict ended the trial on the issue of guilt. [Citation.] That being so, it results that all proceedings thereafter were nullities, for the trial of the defendant was complete and the court had no jurisdiction to recall the jury for further proceedings. [Citation.]" (*People* v. *Grider, supra,* 246 Cal.App.2d at p. 154.)

The *Grider* court found the brief length of time between discharge and reconvening to be irrelevant; what was dispositive was not the length of the interval, but the fact that the court had *lost control* over the jurors in the meantime: "[A] verdict was returned, read by the clerk, assented to by the jury, recorded in the minutes of the court, the jury discharged and the members thereof left the courtroom and conversed with other persons. Under the circumstances, we hold that the court had lost control over the jury for the judicial process had come to its conclusion and thus the length of

time ensuing before the 'reconvening' of the jury is irrelevant." (*People* v. *Grider, supra,* 246 Cal.App.2d at p. 153.)

*People* v. *Romero, supra,* 31 Cal.3d 685, dealt not with a reconvening of the jury per se, but with the question whether jurors may be allowed to impeach their mistakenly rendered verdict subsequent to discharge. In *Romero,* the jury was discharged after the signing, open-court acknowledgement, and recording of verdicts finding the defendant guilty in count I and not guilty in count II. Nearly two months later, the defendant moved for a new trial on count I, based on juror affidavits which stated that the jury, contrary to the verdicts they returned, had unanimously intended to convict him on count *II* and acquit him in count *I.* On appeal, citing, inter alia, Penal Code section 1164, the Supreme Court held that the denial of the new trial motion was proper. The court reasoned that even assuming the jurors had in fact signed the wrong verdict forms, their mistake in acquitting the defendant could not be remedied after discharge: "After the verdict is received and the jury discharged, the court cannot alter or 'correct' the verdict. [Citations.] Moreover, the power to reconsider a verdict is subject to the limitation that a defective verdict of acquittal cannot be reconsidered. (Pen. Code, § 1161; Witkin, Cal. Criminal Procedure (1963) § 533, p. 546.) In addition, Penal Code section 1164 embodies the *no-correction rule* . . . ." (*Id.,* at p. 693, italics added.)

We have found two cases which have upheld the reconvening of juries after discharge, but in both of them the reconvening occurred before the jurors left the jury box, i.e., before the trial courts had lost control over them. (*People* v. *Powell* (1959) 99 Cal.App.2d 178 [221 P.2d 117]; *People* v. *Ham* (1970) 7 Cal.App.3d 768 [86 Cal.Rptr. 906], overruled on other grounds in *People* v. *Compton* (1971) 6 Cal.3d 55 [98 Cal.Rptr. 217, 490 P.2d 537].) In these cases, the jurors were discharged upon stating they could not reach a verdict, but immediately "reconvened" without having left their seats upon discovery that a verdict had indeed been reached on one count (*Powell*) or that some counts had not yet been considered (*Ham*). The Court of Appeal in each case laid particular emphasis on the fact that in between being discharged and reconvened the jury had remained in the box. (*People* v. *Powell, supra,* 99 Cal.App.2d at pp. 181-182; *People* v. *Ham, supra,* 7 Cal.App.3d at p. 776.)[2]

To round out our survey, we note this court's recent case of *People* v. *Peavey* (1981) 126 Cal.App.3d 44 [178 Cal.Rptr. 520]. There, the jurors

---

[2]In *Chong* the court said: "A court would, no doubt, have the power to direct a jury to correct an informal [*sic*] verdict, although the mistake had not been discovered until after the verdict had been entered upon the minutes, '*while the jury are before it and under its control.*'" (*People* v. *Lee Yune Chong, supra,* 94 Cal. at p. 385.)

returned a guilty verdict, acknowledged it in open court, and reacknowledged it individually on being polled. (Pen. Code, § 1163.) After the verdict was recorded and the jury discharged, but while they were still in the box, one juror expressed disagreement with the verdict.

This court held that, despite the jury not having left the box, there was no jurisdiction to reconvene them because, unlike in *Powell* and *Ham,* they had rendered a "complete verdict" ("one that had been received and read by the clerk, acknowledged by the jury, and recorded") prior to discharge: "[T]he verdict given was certainly 'such as the court may receive' under the terms of Penal Code section 1164. It was complete in every way . . . it was read in open court, and the jurors, both collectively and individually, acknowledged that it was their verdict. It was properly recorded . . . . As such, it was 'complete' within the meaning of section 1164, and the jury thereafter was properly discharged from the case. Once the verdict was complete, under the *Grider* holding, the functions of the jury in relation to that verdict ceased and the court no longer had any power over the jury." (*People* v. *Peavey, supra,* 126 Cal.App.3d at p. 49.)

■ From these cases we discern the following principles. Once a "complete" verdict has been rendered per section 1164 and the jurors discharged, the trial court has no jurisdiction to reconvene the jury regardless of whether or not the jury is still under the court's control (*Peavey*). However, if a complete verdict has not been rendered (*Powell, Ham*) or if the verdict is otherwise irregular (*Chong, Grider*), jurisdiction to reconvene the jury depends on whether the jury has left the court's control. If it has, there is no jurisdiction (*Chong, Grider*); if it hasn't, the jury may be reconvened (*Powell, Ham*).

■ It would therefore appear that the reconvening in this case was beyond the trial court's jurisdiction. The jurors had not only left the box and been released from their obligation not to discuss the case with others but had been exposed to the outside world for an entire day before being called back. Respondent argues, however, that there *was* jurisdiction to reconvene. Essentially, respondent states that the discharge was erroneously ordered because the verdict as to the lesser included offense was incomplete; that since the discharge was thus erroneous, the jury could properly be called back to "complete" its verdict.

This argument fails for two reasons.

■ First, recognizing that the discharge was "erroneous" in that it occurred prior to the acknowledgment and recording of the guilty verdict as required by Penal Code sections 1164 and 1149, we still think that a "com-

plete" verdict was returned. *Peavey* defines a complete verdict as one taken in accordance with these Penal Code sections. By the time of discharge here, the court and the parties were aware of but one purported verdict—not guilty—and that verdict was undeniably complete. We see no practical difference between the acknowledgement and recordation of an improperly signed verdict form (*Grider, Romero*) and the acknowledgment and recordation of a verdict form that is but one of the two forms that were signed. We equate, for purposes hereof, nonreading with misreading and error in signing. In either case the jurors have heard their purported verdict announced in open court and have responded in substance (albeit perhaps mistakenly so) that what they have thus heard represents their true judgment of the case. According to all of the authority we have found, a jury's verdict arrived at in this way is final and complete, and there is no jurisdiction to recall them to clarify or change such verdict in any way.[3]

Secondly, and more fundamentally, respondent's argument fails because it ignores the effect of discharge on the jury. *Regardless* of whether and why the discharge may be erroneous, it results in sending the jurors back to the outside world freed of all the admonitions that previously guarded their judgments from improper influences. Once freed, the jurors can properly discuss the case with the district attorney and the People's witnesses, they can read about it in the media and they can entertain "facts" or opinions about it from any source. The essence of cases like *Grider* and *Chong,* and what distinguishes them from *Powell* and *Ham,* is the incalculable and irreversible effect of this loss of control. Once control is lost it would be fatuous to treat the case as if the discharge were merely a fiction. 
The conclusion is inescapable that a discharge accompanied by loss of control of the jury divests the court of jurisdiction to reconvene them whether or not a complete verdict was rendered and whether or not any error occurred at all. To conclude otherwise would pose "an unacceptable risk of interference with duly rendered jury verdicts." (Cf. *People* v. *Romero, supra,* 31 Cal.3d 685, 689.)

The proceedings that occurred after the reconvening were therefore a nullity, and the case now stands in the position it occupied at the time the jury was initially discharged. (*People* v. *Lee Yune Chong, supra,* 94 Cal. 379, 385-386.)

II

At the time of initial discharge, the not guilty verdict was complete and recorded, but the jury had also returned a verdict form purporting to find

---

[3]It is not necessary and we therefore do not decide the question of whether a defendant is entitled to a remedy where the jury, unanimously intending to acquit him or her, mistakenly completes a guilty verdict.

appellant guilty of a lesser included offense. As noted above, the latter form was neither acknowledged by the jurors in open court nor recorded, as required by Penal Code sections 1164 and 1149. Also, because it was never acknowledged, appellant was deprived of his right to poll the jurors individually as to whether it was their true verdict. (Pen. Code, § 1163.)[4] ▪ The question is therefore whether, despite these irregularities and despite the fact that the only complete verdict was not guilty, the verdict form on the lesser included offense can be given legal effect.

Several cases have held that nonprejudicial departures from the procedures specified by Penal Code section 1164 et seq. do not require rejection of a defective verdict. These cases have been severely criticized. (Witkin, Cal. Criminal Procedure (1963) § 532, p. 545; see *People v. Smalling* (1892) 94 Cal. 112 [29 P. 421].[5]

For instance, in *People v. Gilbert* (1880) 57 Cal. 96, and *People v. Smith* (1881) 59 Cal. 601, failure to record the verdict prior to jury discharge was held to be nonprejudicial and therefore inconsequential to the validity of the verdict. In both cases, unlike the present one, the verdict in question was read to the jury in open court, acknowledged by them, and reacknowledged upon polling. In *People v. Smalling, supra,* 94 Cal. 112, all proper procedures were followed as to the substantive verdict of guilty, but the jury's finding rejecting the defendant's plea of former jeopardy was neither acknowledged by them in open court nor recorded prior to their discharge. The Supreme Court stressed the necessity for strict adherence to statute in receiving jury verdicts, but held that there was no prejudicial error in Smalling's case because the finding on former jeopardy was in any event compelled by the jury instructions, defense counsel had waived acknowledgment and contemporaneous recordation of the finding, and the parties were not misled since the finding was orally announced in open court. *Smalling* is distinguishable from the present case on each of those three respects.

Other cases have dealt with the situation where the verdict form signed by the jury is different in some respect from the verdict as declared and acknowledged by the jury in open court. In *People v. Lankford* (1976) 55

---

[4]Section 1163 provides: "When a verdict is rendered, and before it is recorded, the jury may be polled, at the request of either party, in which case they must be severally asked whether it is their verdict, and if any one answers in the negative, the jury must be sent out for further deliberation."

[5]Although finding a nonprejudicial departure (see discussion, *infra*), *Smalling* says: "The record clearly shows that irregularities existed in the manner in which these various verdicts were returned into court,—irregularities occasioned without necessity, and which could have been easily avoided. In cases of felony, . . . the only correct procedure is to adhere strictly to the statute. Any other course is a dangerous innovation, which generally results in a miscarriage of justice." (At p. 120.)

Cal.App.3d 203 [127 Cal.Rptr. 408], the verdict form was apparently signed and dated before one of the original jurors had been replaced by an alternate. When the verdict was orally acknowledged in court, however, it was done so by the 11 remaining original jurors plus the alternate. In response to the defendant's claim that the verdict was defective in that the alternate had not participated in it, the court held there was no error because the "true verdict" was the one acknowledged in open court with participation of the alternate: "The oral declaration of the jurors endorsing the result is the true return of the verdict." (At p. 211.)

Similarly, in *People* v. *Mestas* (1967) 253 Cal.App.2d 780, 786 [61 Cal.Rptr. 731], the court stated, "[w]hile it is established custom in modern practice for the court to submit verdict forms to the jury, *the oral declaration by the jurors unanimously endorsing a given result is the true 'return of the verdict' prior to the recording thereof.*" (Italics added.) Thus, the court held that although the jury initially turned in signed and dated verdict forms purporting to find the defendant both guilty and not guilty, there was no error in immediately sending them back for further deliberations and subsequently allowing them to return and acknowledge only the guilty verdict, because the mere turning in of the verdict forms did not constitute a "true return" of any verdict.

We conclude that the mere turning in of the guilty verdict in this case cannot support a judgment of guilt. Thus in accordance with *Lankford* and *Mestas,* the only true verdict was the one finding appellant not guilty of the charged offense, since that was the only verdict unanimously endorsed by the jurors in open court. We recognize that the guilty verdict form on the lesser included offense conflicted with the "not guilty" verdict since a not guilty verdict, absent deadlock on lesser included offenses, generally implies acquittal of all lesser offenses included in the one charged. (See *Stone* v. *Superior Court* (1982) 31 Cal.3d 503 [183 Cal.Rptr. 647, 646 P.2d 809].) However, where two verdicts are conflicting *(Mestas)* or otherwise nonidentical *(Lankford)* and only one of them is orally acknowledged by the jurors, the acknowledged verdict is the only "true" one and therefore the only one upon which judgment can be rendered.

■ We do not rest our holding exclusively on *Lankford* and *Mestas,* however, since other cases independently convince us that the absence of jury acknowledgment of a verdict and denial of a defendant's right to individually poll the jurors must be deemed prejudicial per se.

The purpose of the acknowledgment and polling provisions of Penal Code sections 1163 and 1164 is to protect the constitutional right of criminal defendants to a unanimous jury verdict. "Every criminal defendant is enti-

tled to a unanimous verdict. [Citations.] And to be valid a criminal verdict must express the independent judgment of each juror. [Citation.] To protect that constitutional right it is provided by statute that on the polling of a jury 'if anyone answer[s] in the negative, the jury must be sent out for further deliberation.' (Pen. Code, § 1163.) Only if no disagreement is expressed on polling is the verdict complete. (Pen. Code, § 1164.) Thus, any juror is empowered to declare, up to the last moment, that he dissents from the verdict. [Citation.] When this occurs, the jury must be sent out for further deliberation. (Pen. Code, §§ 1163, 1164.)" (*Chipman* v. *Superior Court* (1982) 131 Cal.App.3d 263, 266 [183 Cal.Rptr. 647, 646 P.2d 809].)

In *Chipman* the court held that any juror may change his or her verdict up until at least the time polling is completed. There, upon being polled, one of the jurors acknowledged that she had voted for guilt during deliberations and thus that the guilty verdict form represented her intention *as of the time it was dated and signed,* but that she changed her mind sometime after returning to open court. The Court of Appeal reversed, holding that the trial judge had erred in refusing to send the jury back for further deliberations.

In numerous other cases, the processes of requiring the jury to orally acknowledge their verdict and express individual assents to it have revealed that the entire jury was mistaken in signing a particular verdict form, or that one or more jurors acceded to a verdict in the jury room but was unwilling to stand by it in open court. (See, e.g., *People* v. *Mestas, supra,* 253 Cal.App.2d 780; *People* v. *Superior Court* (*Thomas*) (1967) 67 Cal.2d 929 [64 Cal.Rptr. 327, 434 P.2d 623, 25 A.L.R.3d 1143]; *In re Chapman* (1976) 64 Cal.App.3d 806 [134 Cal.Rptr. 760].) Thus, these processes are far from empty formalities of the type that, under *Gilbert* and *Smith,* might be deemed inconsequential to the defendant's constitutional rights. It is these procedures that allow the defendant to "test" whether the verdict form that was signed in the privacy of the jury room represents the "true verdict," i.e., the verdict that each and every juror is willing to hold to under the eyes of the world, or whether it is a product of mistake or unduly precipitous judgment. Moreover, the acknowledgment and polling procedures represent the defendant's *only* opportunity to test the verdict as represented on the verdict form, since after the jury has been discharged, the verdict, with few exceptions not applicable here, cannot be impeached. (*People* v. *Romero, supra,* 31 Cal.3d 685; *People* v. *Lessard* (1962) 58 Cal.2d 447 [25 Cal.Rptr. 78, 375 P.2d 46]; *People* v. *Sutic* (1953) 41 Cal.2d 483 [ 261 P.2d 241]; cf. *People* v. *Hutchinson* (1969) 71 Cal.2d 342 [78 Cal.Rptr. 196, 455 P.2d 132].)

Under these circumstances, failure to allow a defendant to test a verdict in open court must be deemed prejudicial per se. In the instant case, in

order to conclude that defendant was not prejudiced, we would have to rely on juror statements (those made upon reconvening) that are (1) irrelevant to this appeal in that we must view the case as it existed at the time of the initial discharge (*Chong, Peavey*), (2) noncognizable in any event as a belated impeachment of the completed not guilty verdict (*Romero*), and (3) made after the jurors were subject to the type of influences that might naturally cause them to stand by a signature on a verdict form that one or more of them otherwise might have repudiated.

In effect, we are faced with error of constitutional proportions whose actual prejudicial effect is insusceptible of calculation. There is no false humility in recognizing that we lack the omniscience that would enable us to say that no juror in this case would have impeached the guilty verdict form had defendant been afforded his right to *timely* test each juror in open court. We cannot say that they were not influenced by outside forces encountered after discharge. We, therefore, have no choice but to find the errors prejudicial per se.

### Disposition

The judgment of conviction is reversed. The trial court is directed to strike from its records the judgment of guilt entered on June 21, 1983, and to reinstate the not guilty verdict of June 20 and enter judgment thereon.

Kingsley, Acting P. J., and McClosky, J., concurred.

Respondent's petition for a hearing by the Supreme Court was denied July 12, 1984.