Filed 2/10/16  P. v. Grub CA4/1

## NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>DAVID ALLEN GRUB,<br><br>    Defendant and Appellant. | D067347<br><br><br><br>(Super. Ct. No. SCD246580) |


APPEAL from a judgment of the Superior Court of San Diego County, Melinda J. Lasater, Judge.  Affirmed as modified.

Anthony J. Dain, under appointment by the Court of Appeal, for Defendant and Appellant.

Kamala D. Harris, Attorney General, Gerald A. Engler, Chief Assistant Attorney General, Julie L. Garland, Assistant Attorney General, Eric A. Swenson, Kristine A. Gutierrez and Lynne G. McGinnis, Deputy Attorneys General, for Plaintiff and Respondent.

Defendant David Grub was charged by an amended information with, and the jury found him guilty of, four counts of first degree burglary (Pen. Code, §§ 459/460,[1] counts 1-4) and three counts of first degree robbery (§§ 211/212.5, counts 5-7). The information also alleged Grub "intentionally and personally discharged a firearm, to wit: a rifle, within the meaning of . . . [section] 12022.53[, subdivision] (c)" in committing count 6, and that he "personally used a firearm, to wit: a rifle, within the meaning of [section] 12022.53[, subdivision] (b)" in connection with counts 5 and 7 (§ 12022.53, subd. (b)).

When the jury reported its verdicts, the original verdict form provided to the jury on count 6 asked, as to the special finding, whether the jury did or did not find that Grub "did intentionally and personally use a firearm, to wit, a rifle, within the meaning of . . . section 12022.53[, subdivision] (c)," and the jury wrote in "did." The discrepancy was discovered before the jury was discharged and the court asked the jury to return to the deliberation room with a corrected form and the jury subsequently returned a verdict finding that Grub "did intentionally and personally discharge[] a firearm, to wit, a rifle, within the meaning of . . . section 12022.53[, subdivision] (c)." Grub asserts, under the rationale of *People v. Bento* (1998) 65 Cal.App.4th 179 (*Bento*), this was error and the court should have instead entered a judgment reflecting the jury had found true the lesser allegation of personal use of a firearm under section 12022.53, subdivision (b).[2]

---

[1]    All further statutory references are to the Penal Code unless otherwise noted.

[2]    Grub also contends the abstract of judgment must be corrected because, although the jury found true that he personally used a firearm within the meaning of section 12022.53, subdivision (b), in connection with counts 5 and 7, the abstract of judgment

2

I

FACTUAL AND PROCEDURAL BACKGROUND[3]

A. The August 2012 Robbery and Burglary (Counts 5 and 6)

In August 2012 Jay and Noel Hawley were trying to sell their residence in La Jolla, California, and Ms. Chodorow was acting as their realtor. On August 1, 2012, the Hawleys left their home to allow Ms. Chodorow to facilitate a private showing of the house scheduled for 5:30 p.m. While they were still away, but after Chodorow's prospective buyers had departed, a man entered the home and robbed Chodorow at gunpoint. This robbery formed the basis of the allegations contained in count 5.

The Hawleys returned home shortly after 6:00 p.m. and saw Grub leaving their property carrying several of Noel's fur coats. Jay yelled, "What are you doing?" and Grub turned and dropped the furs. Jay pursued him, but then saw Grub raise his arm (holding a gun), saying, "Don't come any closer." Grub fired a shot into the ground, which ricocheted, and when Jay took a few more steps, Grub fired the gun into the ground again. The second shot also ricocheted and either a bullet fragment or debris

reflects the jury instead found true that he intentionally and personally discharged a firearm within the meaning of section 12022.53, subdivision (c), in connection with counts 5 and 7. The People concede, and we agree, that the abstract of judgment must be amended to reflect the correct enhancements found true with respect to counts 5 and 7. (*People v. Mitchell* (2001) 26 Cal.4th 181, 185.)

3      Because Grub makes no challenge on appeal to any of the other convictions, and his appellate challenge is not related to the facts of the other offenses, it is unnecessary to detail the evidence at trial as to counts 1 through 4 or count 7, or the special allegations appended to those counts.

from the ground struck Jay near his eye, knocking him to the ground. This conduct formed the basis of the allegations contained in count 6.

Grub later told a third person that he had committed a robbery in La Jolla and the homeowner had returned home while the robbery was in progress. Grub said he had fired a couple of shots into the ground when the homeowner followed him to prevent the homeowner from seeing Grub's license plate. Shell casings recovered from the La Jolla shooting matched a rifle found in a search of Grub's residence.

B. Trial Proceedings

The jury was instructed that, if it found Grub guilty of count 6, it would be required to assess the additional allegations that Grub "personally and intentionally discharged a firearm during that offense." The court, after instructing that the elements necessary to proving that allegation included the requirement that he "personally discharged" the firearm and "intended to discharge" the firearm, also instructed that if the People had not proved the allegation beyond a reasonable doubt, the jury was required to find the allegation was not proved.

When the jury reached its verdicts and provided them to the clerk for reading, the clerk read the verdict on all counts, including the verdict on count 6, which stated the jury found Grub guilty of robbery as charged in count 6 and further found "that in the commission and attempted commission of the [robbery] the said defendant did intentionally and personally use a firearm, to wit, a rifle[,] within the meaning of . . . section 12022.53[, subdivision] (c)." After the jury was polled and the court told the clerk to record the verdicts, the People asked for a sidebar conference and pointed out

4

there was a discrepancy in the true finding on the section 12022.53, subdivision (c), allegation appended to count 6, because the form "says used instead of discharged," and suggested the form be corrected by interlineation. Although the court agreed that "the verdict has to read 'discharged'[,] [i]f you want to have it corrected, it needs to go back [to] the jury." The defense stated it objected "to the whole process" but that, if the court intended to order the jury to return for additional deliberations, the jury should be provided a new form containing the correct language.

The court indicated it would stop the process, print out a new verdict form for count 6, and return the new form along with the old form to the jury for their additional consideration. The court then informed the jury that "there was a clerical error in the verdict on Count 6. The [section] 12022.53[, subdivision] (c) allegation that is the correct . . . designation but in the allegation it says 'use of a firearm.' It should have been discharged a firearm. So I'm going to send you back in with a new verdict form on that, and you do whatever you think is appropriate, and I'm sending you the old verdict form. I want both back no matter what you decide."

A few minutes later, the jury reached an amended verdict on count 6, finding that Grub in the commission of count 6 "did intentionally and personally discharge[] a firearm, to wit, a rifle within the meaning of . . . section 12022.53[, subdivision] (c)," during that offense. After the jury was repolled, the court discharged the jury and directed the clerk to record all of the remaining verdicts.

5

ANALYSIS

Grub asserts the trial court erred when it permitted the jury to reconvene to provide an amended verdict form on count 6.  Grub argues that, once the jury provided a verdict form for (and had been polled on) that count, it had rendered a complete verdict that had been received and read by the clerk, and the court had no jurisdiction to reconvene the jury as to that verdict.

A. Legal Framework

Section 1164 provides:

> "(a) When the verdict given is receivable by the court, the clerk shall record it in full upon the minutes, and if requested by any party shall read it to the jury, and inquire of them whether it is their verdict.  If any juror disagrees, the fact shall be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury shall, subject to subdivision (b), be discharged from the case.

> "(b) No jury shall be discharged until the court has verified on the record that the jury has either reached a verdict or has formally declared its inability to reach a verdict on all issues before it, including, but not limited to, the degree of the crime or crimes charged, and the truth of any alleged prior conviction whether in the same proceeding or in a bifurcated proceeding."

" ' "Once a 'complete' verdict has been rendered per . . . section 1164 [i.e., a verdict that has been received and read by the clerk, acknowledged by the jury, and recorded] *and the jurors discharged*, the trial court has no jurisdiction to reconvene the jury regardless of whether or not the jury is still under the court's control . . . ." ' "  (*People v. Bonillas* (1989) 48 Cal.3d 757, 770-771, (*Bonillas*).)  " 'However, if a complete verdict has not been rendered [citations] or if the verdict is otherwise irregular [citations], jurisdiction to

6

reconvene the jury depends on whether the jury has left the court's control. If it has, there is no jurisdiction [citations]; if it hasn't, the jury may be reconvened [citations].' " (*People v. Hendricks* (1987) 43 Cal.3d 584, 597 (*Hendricks*), quoting *People v. Thornton* (1984) 155 Cal.App.3d 845, 855.) *Hendricks* explained that the rule "rests on two bases. First, in cases in which the jury renders a complete verdict, the rule is designed to protect the verdict as an operative fact. . . . [¶] Second, in all cases—and therefore fundamentally—the rule is designed to guarantee a fair trial, controlled by the court and shielded from outside influences." (*Hendricks,* at p. 597.)

*Analysis*

We are convinced the court had the authority, under *Bonillas* and *Hendricks,* to reconvene the jury to have it clarify its verdict as to the enhancement because (1) the court had not discharged the jury and (2) the verdict form, in the form in which it was returned, was sufficiently "otherwise irregular" to require clarification.[4] (*Hendricks, supra,* 43 Cal.3d at p. 597.)

---

[4] On this record, it is unclear whether the trial court *also* had the authority to reconvene the jury under *Hendricks* because the verdicts were not "complete." Generally, a verdict is complete if it has been read and received by the clerk, acknowledged by the jury, and recorded. (*Bento, supra*, 65 Cal.App.4th at p. 187.) It is unclear whether the verdict on count 6 had been "recorded" in the court's minutes as contemplated by section 1164, subdivision (a). Certainly, the trial court *directed* the clerk to record the verdicts. However, immediately after the court made that direction, the prosecutor asked for the sidebar conference and the court, after the prosecutor observed that the "[f]irst one is the only one that's been recorded," decided it would "stop it here" and reconvene the jury to consider the new verdict form. This colloquy suggests the verdict on count 6 was not "complete" (and hence the court was empowered to reconvene the jury on that count) because the verdict on count 6 had not *yet* been recorded. (*Bento, supra*.) We need not decide whether the court *also* had authority to

7

In *Bonillas, supra*, 48 Cal.3d 757, the jury initially returned a verdict finding defendant guilty of murder "as charged in the information," and was then excused with orders to call in later to receive instructions on when to reconvene for the penalty phase. After they were excused, defense counsel informed the trial court that the guilty verdict on the murder charge had not expressly specified the degree of murder. On the next court day, the trial court ordered the jury to reconvene to determine the question of the degree of the murder and, within minutes, the jury returned a verdict finding the murder to be in the first degree. (*Id*. at p. 768.) *Bonillas* first noted that, if the court had spotted "the omission at once and required the jury to retire at that time to complete its verdict," "[t]here is no question" it would have been empowered to reconvene the jury to clarify the verdict, and the only issue was whether the delay changed that authority. (*Id*. at pp. 769-770.) *Bonillas* concluded that, because the jury had not been discharged, "the jury here remained within the court's control [citations], their verdict was incomplete, and the court was authorized to reconvene the jury to complete its verdict." (*Id*. at p. 773.)

We believe the present case involved a scenario analogous to the *Bonillas* jury's failure to fix the degree of the offense. Section 12022.53 provides for increasing degrees of punishment when a firearm is employed in committing the specified offenses, imposing a 10-year enhancement if the defendant "personally uses" the firearm (*id.* at subd. (b)) but imposing a doubled term of 20 years if the defendant "personally and *intentionally discharges*" the firearm (*id.* at subd. (c).) The verdict form, as returned, did

reconvene the jury based on "incompleteness" because we conclude the court acted within its authority to reconvene the jury based on the "irregularity" of the verdict form.

8

not clearly specify *which* degree of firearm use was found by the jury. It stated the jury found Grub "intentionally and personally use[d] a firearm . . . within the meaning of . . . section 12022.53[, subdivision] (c)," and such finding was susceptible to the interpretation that the jury found he intentionally discharged the firearm by its finding he "used" the firearm *in a manner coming "within the meaning of" section 12022.53, subdivision (c)*. However, because the nomenclature adopted by the jury employed the generic term "use[d]" rather than the more specific term of "discharged," it was also susceptible to the interpretation that it found him guilty of the lesser degree of "personal use" under subdivision (b), even though the jury also declared such use was "within the meaning of" section 12022.53, subdivision (c). This presented an irreconcilable ambiguity in the degree of culpability found by the jury, which is the functional equivalent of the absence of *any* fixing of the degree of the offense as was present in *Bonillas*. We conclude this case fell within *Hendricks's* observation that " 'if the verdict is otherwise irregular [citations], jurisdiction to reconvene the jury depends on whether the jury has left the court's control. If it has, there is no jurisdiction [citations]; if it hasn't, the jury may be reconvened [citations].' " (*Hendricks, supra,* 43 Cal.3d at p. 597.)

We also reject Grub's argument that *Bento* controls here. In *Bento*, defendants Bento and Johnson were tried jointly on numerous counts. The jury informed the court it had reached verdicts on each count against Johnson, but had only reached verdicts on three of the counts against Bento. The jury's verdicts concerning Johnson were read in open court, the jurors were polled and unanimously affirmed the verdicts against Johnson as read were their own, and the trial court then directed the clerk to record these verdicts.

9

The trial court then read the verdicts on counts 3 through 5 against Bento in open court, the jury was polled about these verdicts, and the verdicts against Bento were recorded. However, while the trial court and counsel discussed the remaining counts against Bento, a juror requested a conference with the trial court. The juror stated that, during the polling, she had been waffling about Johnson's guilt on two of the counts, but the trial court declined to reconvene the jury, reasoning the verdicts against Johnson had been recorded after the members of the jury had collectively and individually affirmed them, including the waffling juror who had voiced no confusion or dissent during the polling. (*Bento, supra*, 65 Cal.App.4th at pp. 187-188.) The appellate court concluded the trial court correctly declined to reopen the verdicts against Johnson, noting the verdicts had "resolved all requisite matters concerning Johnson, the jurors collectively and individually affirmed the verdicts in open court, and the trial court verified the verdicts and directed the clerk to record them . . . and the verdicts were free from procedural irregularities . . . ." (*Id*. at p. 188.) Rejecting the defense claim that the trial court may reopen a verdict when the jury had not yet been discharged, the *Bento* court concluded that once a verdict has been returned, the jury has been polled and affirms its verdict, it has been recorded, and the verdict is free from procedural irregularities, it is too late for a juror to express dissent and impeach that verdict merely because the trial court had not discharged the jury. (*Bento,* at pp. 188-193.)

*Bento* is inapposite for two reasons. First, *Bento* specifically noted its verdicts "resolved all requisite matters concerning [the defendant and] . . . were free from procedural irregularities when recorded" (*Bento, supra,* 65 Cal.App.4th at p. 188), while

10

here, the verdict used terminology creating an irreconcilable ambiguity in the degree of culpability found by the jury and hence was not "free from procedural irregularities." Second, unlike *Bento*, this case did not involve a juror who (after orally affirming the verdict was his or her verdict) sought to change his or her mind. We conclude *Bento* has no application to this case.

## DISPOSITION

The abstract of judgment shall be amended to reflect the enhancements found true with respect to counts 5 and 7 were pursuant to Penal Code section 12022.53, subdivision (b), and as so modified, the judgment is affirmed.


McDONALD, J.

WE CONCUR:


HUFFMAN, Acting P. J.


O'ROURKE, J.


11