Filed 6/3/26  P. v. Rodriguez CA2/2

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b). This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| THE PEOPLE, | B344816 |
| Plaintiff and Respondent, | Los Angeles County |
| v. | Super. Ct. No. XCNBA346903 |
| ABEL ALVARO RODRIGUEZ, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Laura F. Priver, Judge. Affirmed.

John Steinberg, under appointment by the Court of Appeal, for Defendant and Appellant.

Rob Bonta, Attorney General, Charles C. Ragland, Chief Assistant Attorney General, Susan Sullivan Pithey, Assistant Attorney General, Amanda V. Lopez and Gary A. Lieberman, Deputy Attorneys General, for Plaintiff and Respondent.

————————————

## INTRODUCTION

Defendant Abel Alvaro Rodriguez appeals the summary denial of his petition for resentencing pursuant to Penal Code section 1172.6.[1] We agree with the trial court the record of conviction showed Rodriguez is ineligible for section 1172.6 resentencing as a matter of law. We therefore affirm.

## BACKGROUND

We recite only those facts necessary to support our conclusion. The detailed facts are contained in our 2012 opinion affirming in part and reversing in part Rodriguez's convictions, *People v. Vasquez* (Mar. 12, 2012, B225354) (nonpub. opn.) (*Vazquez*).

In January 2009, the People charged Rodriguez and two other men, Jamie Basurto Vasquez and Damian Rocha, with murder (§ 187, subd. (a)) relating to the April 2008 homicide of Carl Cerda. The People also charged Rodriguez with being a felon in possession of a firearm (§ 12021, subd. (a)(1)) on two occasions months after the homicide took place. As to the murder charges against each defendant, the People alleged a principal's personal use of a firearm (§ 12022.53, subds. (b), (c), (d), (e)) and gang enhancements (§ 186.22, subd. (b)(1)(A), (b)(1)(C), (b)(4)).

The case went to trial, and all three defendants were tried together. The jury instructions included CALCRIM Nos. 400[2] and

---

[1] Undesignated statutory references are to the Penal Code.

[2] CALCRIM No. 400 was given as follows: "A person may be guilty of a crime in two ways. One, he or she may have directly committed the crime. I will call that person the perpetrator. Two, he or she may have aided and abetted a perpetrator, who directly committed the crime. A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."

401[3] on accomplice liability but did not include CALCRIM No. 402 or 403 on the natural and probable consequences theory.

During deliberations, the jury submitted the following question to the trial court: "We need clarification on points 2 & 3 of line 401 in the Juror Instructions—mainly regarding 'intention' and what 'the crime' is (or if it could be any crime)." The court responded orally as follows: "[T]o prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that—regarding points two and three, the defendant knew that the perpetrator intended to commit the crime, which I believe everybody agreed was murder; and as for number three, before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime of murder, all right?" The foreperson

---

[3] CALCRIM No. 401 was given as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting that crime, the People must prove that: [¶] 1. The perpetrator committed the crime; [¶] 2. The defendant knew that the perpetrator intended to commit the crime; [¶] 3. Before or during the commission of the crime, the defendant intended to aid and abet the perpetrator in committing the crime; [¶] AND [¶] 4. The defendant's words or conduct did in fact aid and abet the perpetrator's commission of the crime. [¶] Someone aids and abets a crime if he or she knows of the perpetrator's unlawful purpose and he or she specifically intends to, and does in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of that crime. [¶] If all of these requirements are proved, the defendant does not need to actually have been present when the crime was committed to be guilty as an aider and abettor."

confirmed this response resolved the question, stating "We're good now."

The jury convicted Rodriguez and Vasquez of the first degree murder of Cerda. It acquitted Rocha. The jury found Vasquez discharged a firearm causing death under section 12022.53, subdivisions (b), (c), (d), and (e). As to Rodriguez, the jury found a principal had discharged a firearm causing death under section 12022.53, subdivisions (b), (c), (d), and (e). As to both Rodriguez and Vasquez, the jury found the gang allegations true under section 186.22, subdivision (b). In addition, the jury convicted Rodriguez on two counts of being a felon in possession of a firearm in violation of section 12021, subdivision (a)(1). (*Vasquez*, *supra,* B225354.)

The trial court sentenced Rodriguez and Vasquez to terms of 50 years to life on their murder convictions and enhancements. It imposed concurrent sentences for Rodriguez's other convictions. (*Vasquez*, *supra,* B225354.)

On appeal, we reversed Rodriguez's convictions for possession of a firearm by a convicted felon because the jury did not orally declare the verdicts in open court, rendering them invalid under *People v. Thornton* (1984) 155 Cal.App.3d 845, 858. (*Vasquez*, *supra,* B225354.) We affirmed in all other respects. (*Ibid.*)

In August 2023, Rodriguez filed a petition for resentencing pursuant to section 1172.6. That section is the procedural vehicle by which persons convicted under legal theories invalidated by Senate Bill 1437 (2017–2018 Reg. Sess.), effective January 2019, may be resentenced. In his petition, Rodriguez asserted, in a conclusory fashion, he satisfied the requirements for section 1172.6 relief. Among other things, he asserted he "could not presently be convicted of murder . . . because of changes made

4

to [sections] 188 and 189 effective January 1st, 2019" (i.e., pursuant to Sen. Bill 1437). The petition contained no facts pertaining to his conduct underlying his conviction to support this or any other assertions.

The People filed an opposition and requested judicial notice of our *Vasquez* opinion "as law of the case, and pursuant to California Rules of Court, Rule 8.1115(b)(2)."

Rodriguez, through appointed counsel, filed a reply.

The trial court held a hearing on Rodriguez's petition in March 2025 pursuant to section 1172.6, subdivision (c). A few days later, it issued an order denying the petition for failure to state a prima facie case for relief. It explained "the jury instructions did not allow the jury to convict [Rodriguez] under a theory of imputed malice based on his participating in a crime alone. Rather, the verdict forms and jury instructions show, as a matter of law, [Rodriguez] was a direct aider and abettor and manifested an intent to kill, and therefore, could still be convicted of murder under current law." The court then discussed how the facts, as recited in our *Vasquez* opinion, compel the same conclusion.

Rodriguez timely appealed.

## DISCUSSION

Senate Bill 1437 was enacted to "amend the felony murder rule and the natural and probable consequences doctrine, as it relates to murder, to ensure that murder liability is not imposed on a person who is not the actual killer, did not act with the intent to kill, or was not a major participant in the underlying felony who acted with reckless indifference to human life." (Stats. 2018, ch. 1015, § 1(f); see also *People v. Curiel* (2023) 15 Cal.5th 433, 448 (*Curiel*).)

5

As amended by Senate Bill 1437, section 188, subdivision (a)(3) requires a principal in a crime to act with malice aforethought in order to be convicted of murder, subject to exceptions set forth in subdivision (e) (pertaining to felony murder). (Stats. 2018, ch. 1015, § 3.) "Malice shall not be imputed to a person based solely on his or her participation in a crime." (§ 188, subd. (a)(3).) "One effect of this requirement was to eliminate liability for murder as an aider and abettor under the natural and probable consequences doctrine." (*Curiel, supra,* 15 Cal.5th at p. 449.)

Senate Bill 1437's amendments to section 189, subdivision (e) narrowed the felony murder rule to permit convictions for participants in the underlying felony to the following persons: (1) the actual killer; (2) one who, "with the intent to kill, aided, abetted, counseled, commanded, induced, solicited, requested, or assisted the actual killer in the commission of murder in the first degree"; and (3) "a major participant in the underlying felony [who] acted with reckless indifference to human life . . . ." (See also *Curiel, supra,* 15 Cal.5th at p. 448.)

Section 1172.6 allows for the resentencing of persons convicted under a now-abrogated theory of murder or attempted murder liability. Specifically, it applies to persons "convicted of felony murder or murder under the natural and probable consequences doctrine or other theory under which malice is imputed to a person based solely on that person's participation in a crime, attempted murder under the natural and probable consequences doctrine, or manslaughter." (*Id.,* subd. (a).)

Thus, even after the enactment of Senate Bill 1437, a person who willfully, deliberately, and with premeditation kills another person (§ 189, subd. (a)), and any person who directly

6

aids or abets such a person (§ 31; *Curiel*, *supra*, 15 Cal.5th at p. 462), remains liable for first degree murder and does not qualify for resentencing under section 1172.6.

Here, Rodriguez contends the record of conviction leaves open the possibility he was convicted under a theory abrogated by Senate Bill 1437. It is undisputed the jury was not specifically instructed on an abrogated theory. It was not instructed on the natural and probable consequences theory (e.g., CALCRIM Nos. 402 & 403). Nor was it instructed on any felony murder theory. The sole instructions jurors received on accomplice liability were CALCRIM Nos. 400 and 401, which pertain to the still-valid direct aider and abettor liability.

Nevertheless, Rodriguez argues the following language in CALCRIM No. 400, as given, allowed the jury to impute the malice of Vasquez, the actual shooter, to Rodriguez: "A person is equally guilty of the crime whether he or she committed it personally or aided and abetted the perpetrator who committed it."

As an initial matter, it is difficult to see how the doctrine of law of the case does not foreclose Rodriguez from making this argument. (See *Leider v. Lewis* (2017) 2 Cal.5th 1121, 1127 [" ' "The decision of an appellate court, stating a rule of law necessary to the decision of the case, conclusively establishes that rule and makes it determinative of the rights of the same parties in any subsequent retrial or appeal in the same case." ' "].) On direct appeal from his conviction, he argued CALCRIM No. 400's "equally guilty" language excused the prosecution from proving his own mental state. After reviewing the other jury instructions (CALCRIM Nos. 401, 520 & 521), we concluded as follows: "By convicting Rodriguez of first degree murder under these instructions, the jury necessarily found that he acted, either on

7

his own or as an aider and abettor, willfully and with the intent to kill." (*Vasquez, supra*, B225354.) If it is binding here, this legal conclusion would preclude any relief.

Even if law of the case does not foreclose Rodriguez's argument that the jury could have imputed Vazquez's malice to him, we stand by our conclusion in *Vasquez* and reach the same conclusion here.

Rodriguez's argument relies primarily on *People v. Langi* (2022) 73 Cal.App.5th 972. There, the Court of Appeal found the jury instructions, even though they did not specifically instruct on a theory abrogated by Senate Bill 1437, allowed the defendant to be convicted on an aiding and abetting theory without harboring intent to kill. Importantly, the *Langi* jury was instructed on aiding and abetting liability and second degree murder, a crime to which the court found "the standard aiding-and-abetting instructions are ill-suited [where] a trial court uses such [instructions] without tailoring [them] to the specifics of [second degree murder]." (*Langi,* at p. 982.) Specifically, the *Langi* court agreed with the defendant that "under the instructions that were given, the jury was entitled to conclude that, to be guilty as an aider and abettor of second degree murder, [the defendant] need[ed] only have intended to encourage the [actual killer's] intentional act— . . . punching [the victim]—whether or not [the defendant] intended to aid or encourage [the] killing, and whether or not he personally knew of and disregarded the risk of such a killing." (*Id.* at p. 983.)

Here, in contrast, the instructions did not allow the jury to convict Rodriguez of first degree murder without finding he intended Cerda's death. Aside from Rodriguez's convictions, the only other conviction in the case was of Vasquez for first degree murder. The jury also found Vasquez personally and

8

intentionally shot and killed Cerda, and, as to Rodriguez's conviction, a principal personally and intentionally killed Cerda.

The CALCRIM No. 521 instruction given for first degree murder required the jury to find the defendant "intended to kill." To be guilty of murder on an aiding and abetting theory under CALCRIM No. 401, the jury had to find the accomplice "knew that the perpetrator intended to commit the crime," "intended to aid and abet the perpetrator in committing the crime," and "did in fact aid and abet the perpetrator's commission of the crime." That instruction further specified aiding and abetting requires the accomplice "kn[e]w[] of the perpetrator's unlawful purpose and . . . specifically intend[ed] to, and d[id] in fact, aid, facilitate, promote, encourage, or instigate the perpetrator's commission of th[e] crime."

In short, to the extent the jury convicted Rodriguez as an accomplice and not, as the firearm enhancement findings imply, the actual killer, it necessarily found Rodriguez (i) knew Vasquez intended to kill Cerda; and (ii) both intended and acted to aid, facilitate, promote, encourage, or instigate that intentional killing. This is not an imputation of intent but rather a finding of independent intent to kill on the part of Rodriguez.

Rodriguez argues there is evidence of ambiguity in the CALCRIM No. 401 instruction because the jury asked a question about it. He then insists we cannot consider the court's clarification as part of the record of conviction. Whatever merit there is in this position, we are satisfied the instructions here were clear in requiring the finding of intent just described. The jury's question was what intent and crime the aiding and abetting applied to. Again, Rodriguez's codefendants were charged only with murder, and the only conviction of a codefendant was for first degree murder. To the extent the jury

9

convicted Rodriguez of first degree murder as an accomplice, that conviction could only have been based on a perpetrator committing that crime. The CALCRIM No. 401 instruction introduces the aiding and abetting elements as follows: "To prove that the defendant is guilty of a crime based on aiding and abetting *that* crime . . . ." (Italics added.) In describing the elements, it proceeds to refer to "the crime." Under the circumstances, there is simply no way the jury could have convicted Rodriguez of first degree murder as an accomplice without understanding that "the crime" was first degree murder.

Finally, we note Rodriguez's argument that the trial court engaged in impermissible factfinding when it relied on the factual background provided in our *Vasquez* opinion. As we are able to affirm as a matter of law without any reference to those facts, any error on the part of the trial court was necessarily harmless.

## DISPOSITION

The trial court's denial of Rodriguez's section 1172.6 petition is affirmed.


RICHARDSON, J.

WE CONCUR:

CHAVEZ, Acting P. J.


GOORVITCH, J.

10