[Crim. No. 2916. Third Dist. June 16, 1959.]

THE PEOPLE, Respondent, v. JOHNNIE CAREY HUGHES, Appellant.

Robert W. Anderson, under appointment by the District Court of Appeal, for Appellant.

Stanley Mosk, Attorney General, and Lloyd Hinkelman, Deputy Attorney General, for Respondent.

VAN DYKE, P. J.—This is an appeal from a judgment declaring appellant guilty of murder of the first degree, and fixing his punishment at life imprisonment, and from an order denying a new trial. Appellant contends: (1) That the court erred in admitting his extrajudicial statements into evidence; in giving an instruction offered by the People; in refusing to give an instruction requested by him; and, (2) that the verdict of the jury found him guilty of second degree murder only. He asks a reversal and a new trial or, in the alternative, a reduction to a judgment of second degree.

It is unnecessary to give a detailed statement of the facts surrounding the killing. It will suffice to say that appellant killed one Frances Grubbs, by shooting her through the chest with a pistol during a dispute between them wherein he had demanded that she go with him to his home, which demand she refused. On the evidence the jury could have found either first or second degree murder.

As to duress and coercion which he contends were used in extracting statements the record shows the following: Appellant, a 24-year-old Negro, raised in Georgia, and educated through the 11th grade in its schools, testified on *voir dire* as follows: He was arrested about 3 or 3:30 on the morning of May 3d shortly after the killing of Frances Grubbs. He was taken to the Butte County jail and kept in the company of one or more deputy sheriffs until 6 o'clock

that night. Most of the time he was not allowed to smoke. He was questioned up to 1:30 in the afternoon and had been given no rest during that period. About 1:30 he was taken to the morgue where deceased's body was and was kept there about an hour and a half. Over his protest the officers insisted that he be in the same room with the body and look at it. When he refused to look at the body, a deputy sheriff took his head and twisted it so that he was directly facing the corpse. (This was admitted by the deputy.) He first closed his eyes but later looked at the body. He was questioned continuously at the morgue and was kept there until about 5:30 p.m. He was scared because he did not know what the officers were going to do to him. He was tired and did not know what he had told them or what he was saying. On May 5th he was taken to the district attorney's office and there in the presence of a police captain his statement was taken on a tape recorder. He was still scared. If he had not been treated as he was, he would not have made a statement and the statement he gave was not given of his own free will. The district attorney more or less put words in his mouth, asking him, "Now ain't that right?" and "Now ain't that right what I am telling you?" He could not remember everything that he said to the district attorney. No one forced him to give the statement but he was led into making it and got no chance to say anything to the district attorney because that official would say to him, "Ain't that right?" He was scared throughout the interview and did not know but what he was going to be subjected to the same treatment as in the morgue. He did not know whether or not the officers were going to take him out and beat him up and was afraid that if he did not talk something would happen to him. It appears from the record that on the element of premeditation and motive for killing, his statements were largely suggested in such manner as to leave him little to say save to affirm the wording of the questions addressed to him. For example: "Q. Were you pretty much in love with this girl? A. Yes, I was. Q. And actually, was your whole thought one that when you pulled the trigger you said well if she is not going to go with me she is not going to go with anybody, was that, I mean, I want to know the truth, is that the truth? A. That's right."

As opposed to appellant's testimony on *voir dire* there was ample testimony from the several officials involved that all statements he made were free and voluntary; that he was

not subjected to denial of food, rest, or smoking; that no force or threats of any sort were used against him nor inducive promises made to him.

The situation presented by the record is one where the preliminary ruling of the trial court that the statements were admissible is sufficiently supported. The court properly left the issue of freedom from duress to the jury under appropriate instructions. The record does not support the assignment of error charged. (*People* v. *Gonzales*, 24 Cal.2d 870 [151 P.2d 251]; *People* v. *Crooker*, 47 Cal.2d 348, 354-355 [303 P.2d 753].)

Appellant charges error in the giving of the following instruction offered by the People: "A confession is not voluntary when it has been obtained by any kind or degree of violence, abuse or threat, or by any coaxing, cajoling, or menacing influence which induces in the mind of the defendant the belief or hope that he will gain some advantage by making a confession, provided that any such inducement by which the confession is obtained originates either from a law enforcement officer or in the presence of such an officer, under circumstances from which the accused might reasonably be expected to assume that the inducement is authorized by the officer." Appellant challenges this instruction because it omitted any reference to "psychological coercion or duress." Appellant cites *People* v. *Baldwin*, 42 Cal.2d 858, 867 [270 P.2d 1028], and *People* v. *Loper*, 159 Cal. 6, 20 [112 P. 720, Ann.Cas. 1912B 1193], wherein the importance and effect of psychological coercion and duress is discussed. In view of appellant's background and his testimony concerning his fear of what might be done to him it might have been well to mention the matter of psychological coercion and duress but we think that the jury were sufficiently and properly instructed. Instructions given were taken from California Jury Instructions (CALJIC).

Appellant contends that the court erred in rejecting his proposed instruction, reading as follows: "If you find from the evidence that the defendant gave a statement to the Sheriff of Butte County on May 3, 1958, that for about 10½ hours before giving such statement he was subjected to coercion and duress by said Sheriff's deputies; that he gave such statement because of such coercion or duress; that on May 5, 1958, he gave another statement to the district attorney, that at the time of giving such statement to the district

attorney he was still acting under the coercion and duress to which he was subjected on May 3, 1958, then you will find that the latter statement was not a voluntary statement, and you will disregard it in arriving at your verdict.'' Appellant points out that this instruction emphasizes the factor of fear duration once fear is induced and no instruction given did so. But that fear endures for a time is matter of common knowledge. The jury needed no instruction on that matter.

■ The remaining assignment of error has to do with the form of the verdict first returned by the jury. The verdict found appellant guilty ''as charged in the information.'' Section 1157 of the Penal Code reads as follows:

''Whenever a defendant is convicted of a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime of which the defendant is guilty, shall be deemed to be of the lesser degree.''

Appellant contends that by the jury's verdict, read and construed with the code section, he was convicted of second degree murder and the judgment must be modified accordingly; that all proceedings after receipt of the verdict were nullities. The People argue that the verdict received was merely informal, was intended to be and was a verdict of first degree murder and was properly corrected to so show.

In order to properly discuss this issue we must refer to the record. Agreeably to sections 190 and 190.1 of the Penal Code the court first tried the issue of guilt. The evidence addressed to that issue was closed, the case was argued, and the jury was instructed. The following then occurred:

''THE COURT: You will be given five separate verdicts. You will return only one of them. I think they are self explanatory. In the order in which they are in my hand, and I can assure you it is not the order of significance, and frankly, I have no opinion as to what your verdict should be, but you have—the first one here is a verdict of guilty as charged in the information, which is a charge of first degree murder. If after considering the evidence and the law that should be your verdict you would use that form. The second one is a verdict of guilty of murder in the second degree. If he was not guilty of murder in the first degree and your deliberation indicated, under the definitions of the law, the evidence proved him guilty as required by law of second degree murder, you would use that form. The other two are voluntary manslaughter

which has been defined and involuntary manslaughter which has been defined and of course a verdict of not guilty. As I say of the five you will use only one of those verdicts." After a period of deliberation the jury returned to the courtroom and requested that the court read again the definitions of first and second degree murder and of manslaughter. This was done. The jury then returned a verdict reading as follows: "We, the Jury in the above entitled action, find the defendant Johnnie Carey Hughes guilty as charged in the information." They were polled and their answers indicated that the verdict was unanimous. The verdict was received and entered in the minutes. Thereupon they were released and told to return the next morning. Said the court: "Ladies and Gentlemen of the Jury, we have completed one stage of the trial. We will reconvene tomorrow morning at 10 o'clock and there will be further evidence and further instructions concerning the verdict on penalty." The next morning and before beginning the hearing addressed to the question of penalty, the court said: "Mr. Neal [the Foreman], in the forms of verdict that were handed you yesterday it was explained that there were five verdicts being handed to you and the verdict of 'Guilty as charged in the information' was a charge of murder in the first degree; and that was your understanding? FOREMAN NEAL: Yes, sir. THE COURT: Did any juror have a different understanding? There is no question as to the degree of guilt insofar as it is reflected in your verdict. Very well. We are ready to proceed with the second stage of the proceedings." Evidence addressed to the question of penalty was then received. When both sides had closed the following occurred: "THE COURT: . . . Ladies and Gentlemen of the Jury, because of certain technicalities of law the forms of verdict had been submitted to the attorneys and the particular first degree form, alterations having been suggested, I frankly didn't have time to examine the matter. It is required that the verdict be in writing and that the degree be fixed by the jury. In view of the fact that the degree was not specifically fixed by the Jury, I am going to ask you at this time to retire, and submit to you this form of verdict as supplementing and completing yesterdays verdict, 'We the Jury in the above entitled action having heretofore returned a verdict of guilty do hereby fix the degree of the crime as murder in the blank degree.' Your foreman will fill in the first or second and sign. I don't think it will take you very long, however if there is any question in any juror's mind or any hesitancy

as to the degree of guilt you will require further time for that. You may retire at this time to the jury room. MR. ANDERSON [Attorney for defendant]: Your Honor, at this point, Your Honor, we object to the submission of another verdict. The verdict has been returned. It cannot thereafter be touched by anyone. THE COURT: Your objection is noted and I don't think it needs to be made. If it is irregular it is irregular. You may proceed.'' The jury retired and within a few minutes returned. The following then occurred: ''THE COURT: Mr. Neal, you have signed the supplemental verdict? FOREMAN NEAL: Yes. THE COURT: Very well, if you will hand it to the Bailiff please. Without waiving any objection Mr. Anderson, it may be stipulated it may be read? MR. ANDERSON: Yes, Your Honor, so stipulated. THE COURT: 'In the Superior Court of the State of California, in and for the County of Butte. The People of the State of California, Plaintiff, vs. Johnnie Carey Hughes, Defendant, No. 33211. Verdict of the Jury. We, the Jury, in the above entitled action, having heretofore returned a verdict of guilty do hereby fix the degree of the crime as murder in the first degree. . . .' It will be ordered that the verdict be filed as a supplemental verdict, Madam Clerk. You may proceed, Mr. Lyde.'' Thereafter the issue of penalty was argued to the jury, instructions addressed to that issue were given and a verdict was returned, fixing the penalty at life imprisonment.

Under Penal Code, section 190.1, there may be one, two or even three stages of a trial for murder. Prior to the enactment in 1957 of an amendment to Penal Code, section 190, and of section 190.1 as new legislation, such a trial had two possible stages. In the first or ''guilt'' stage the jury determined guilt or innocence and if that determination was that the defendant was guilty of murder of the first degree the jury fixed the penalty at life imprisonment or death as a part of the verdict. A plea of insanity, if made, was determined in the second stage by the same or another jury. (*People* v. *Wells*, 33 Cal.2d 330 [202 P.2d 53].) By amending section 190 of the Penal Code and enacting section 190.1, the Legislature provided for another stage where guilt had been determined as constituting first degree murder. Section 190 as amended directed that ''the matter of punishment shall be determined as provided in Section 190.1.'' That section provided as follows:

''The guilt or innocence of every person charged with an offense for which the penalty is in the alternative death or

imprisonment for life shall first be determined, without a finding as to penalty. If such person has been found guilty of an offense punishable by life imprisonment or death, there shall thereupon be further proceedings on the issue of penalty, and the trier of fact shall fix the penalty. Evidence may be presented at the further proceedings on the issue of penalty, of the circumstances surrounding the crime, of the defendant's background and history, and of any facts in aggravation or mitigation of the penalty. . . .''

It is apparent that on the issue of penalty much evidence, inadmissible, or not presented, on the issue of guilt, may properly be received to aid the trier of fact in determining penalty. In the instant case much evidence of that sort detrimental to appellant was received.

In this case, as permitted by statute, the same jury which passed upon the issue of guilt was retained to try the issue of penalty. Nevertheless another jury might have been called in upon that issue for the section provides that, ''If the defendant was convicted by a jury, the trier of fact on the issue of penalty and the issue of sanity, if any, shall be the same jury unless, for good cause shown, the court discharges that jury in which case a new jury shall be drawn to determine the issue of penalty, or the issue of sanity or both such issues, as the case may be.'' And the section provides that whether the same jury or another jury be called to try the issue of penalty ''the issue of guilt shall not be retried by such jury.'' It is thus made apparent that, although the trial of the issue of guilt may be one of a series of stages in a trial for murder, nevertheless it is required to be complete within itself and in that sense has the aspects of a single trial.

With respect to the form of the verdict returned by the jury during the ''guilt'' stage of the trial the attorney general argues that we are dealing with a mere informality, that since the same jury was retained to try the issue of penalty the court was still in control of the jury and had power and discretion to cause the informal verdict to be corrected. We think that what was actually done discloses that the correction of the verdict by the so-called supplementary verdict cannot be approved. When during the trial of the issue of penalty the court endeavored to ''correct'' the verdict on ''guilt'' what was done was, in point of fact, a resubmission to the jury of the issue of degree. In a very essential way this was a retrial of the issue of guilt in violation of the specific pro-

vision of Penal Code, section 190.1, that, "the issue of guilt shall not be retried by such jury." Furthermore, it was a retrial of the issue of guilt after the jury had heard much evidence, inadmissible on that issue, and damaging to appellant. If, as the attorney general argues, we were to consider the verdict of "guilty as charged" to have been formally defective and should further consider that the court was empowered to have the jury correct its verdict, we would still be compelled to say that by reason of the way in which that was done the judgment would have to be reversed.

However, in our view, section 1157 of the Penal Code, heretofore quoted, was applicable to the verdict returned by the jury. After that verdict had been received and the jury had been released that verdict under the provisions of the code section was a verdict of second degree murder. Of that crime and of that crime only has appellant been convicted and by that verdict he had been acquitted of first degree murder. That verdict was not an informal verdict but, read in the light of the statute, was complete and definite. So far as the jury was concerned it ended the trial on the issue of guilt. That being so, it results that all proceedings thereafter were nullities. There was no issue of penalty for the jury to determine and no plea of insanity had been interposed. Therefore the trial of the appellant was complete and the court had no jurisdiction to recall the jury for further proceedings.

It is ordered that the judgment appealed from be reversed, with directions to the trial court to pronounce and enter a judgment of conviction of second degree murder. The order denying a new trial is affirmed.

Peek, J., and Schottky, J., concurred.