[Crim. No. 4160. Third Dist. Nov. 3, 1966.]

THE PEOPLE, Plaintiff and Respondent, v. HARRY LEE GRIDER, Defendant and Appellant.

Fred P. Tuttle III, Public Defender, for Defendant and Appellant.

150

Thomas C. Lynch, Attorney General, and Theodore T. N. Slocum, Deputy Attorney General, for Plaintiff and Respondent.

REGAN, J.—Defendant appeals from a conviction of robbery in the first degree (Pen. Code, § 211a), after a jury trial where defendant was represented by the public defender. The case in the trial court involved the entry and recordation of two separate verdicts—guilty of robbery in the second degree and guilty of robbery in the first degree. The only issue raised on this appeal is the validity of the second verdict. Defendant's purported appeal from the order denying a new trial and sentence is dismissed.

 It is unnecessary to set forth a detailed statement of facts surrounding the robbery. It will suffice to state that defendant robbed a liquor store. The evidence would support a finding of robbery in either the first or second degree.

At the completion of the trial proceedings, the jury was given three forms of verdict: guilty of robbery in the first degree; guilty in the second degree; and innocent. At 3:18 p.m., on January 26, 1966, after deliberating for a little over an hour, the jury foreman informed the court that the jury had reached a verdict. The clerk read the verdict which found the defendant guilty of violation of Penal Code section 211, robbery in the second degree, a lesser included offense of the charge. The verdict had been signed by the foreman. After the reading of the verdict the jury was asked if this was their verdict and they replied "yes." There was no request for a poll, and the judge ordered the clerk to enter the verdict in the minutes and records of the court. After thanking the jurors for their services the judge discharged the jury and adjourned the court.

The verdict was entered in the minutes of the court by the clerk at 3:30 p.m. At 3:39 p.m. the judge reconvened the court with all members of the jury, defendant and counsel for both sides present. The judge then stated that he had been "informed that there may have been a mistake on the verdict signed."

The clerk re-read the verdict finding the defendant guilty of second degree robbery, and the judge ordered a poll of the jury on the question "[I]s this individually the verdict you voted for, that is, robbery in the second degree . . .?" Each juror answered "No" to the question put. Upon questioning

by the trial judge, the jury foreman stated that he had made a mistake in reading and signing the first verdict.

The judge then directed the jury to continue its deliberations and the jury was left in the courtroom for this purpose. At 3 :50 p.m. the jury returned a second verdict of robbery in the first degree. The jury was polled as to whether they had individually voted for this second verdict, and each juror answered ''Yes.''

The judge then ordered another poll, and asked each juror whether this second verdict was the one which they had voted for originally. Each juror answered ''Yes.'' In response to a question put by the court as to whether the signing of the first verdict was a clerical error, the foreman replied ''Yes.'' The court entered the new verdict conditionally, pending hearing of arguments on defense counsel's motion to set the verdict aside.

The prosecutor and the bailiff testified as to how they discovered that there was a mistake in the original verdict.

As the jury was leaving the courtroom and dispersing into the adjoining foyer after it had been discharged, the prosecutor asked one of the jurors, ''How did you ever find second degree in this case?'' The juror replied, ''We didn't. We found first degree.'' Upon hearing this, the prosecutor told the bailiff to stop the jury and to have them reconvene in the courtroom, and notify the judge, defense attorney and defendant.

As the bailiff circulated among the jurors in the hallway outside the courtroom, he heard a juror remark to a couple of other ladies, ''That wasn't our verdict. The Foreman just signed the wrong verdict.'' The bailiff motioned to the prosecutor and defense counsel and then left immediately to notify the judge.

On February 10, 1966, the court denied defense counsel's motion to set aside the second verdict. The court ruled that the second verdict was a correction of a clerical error made by the foreman and ordered the first verdict of robbery of second degree set aside, but only upon the condition that the first degree verdict be upheld on appeal. Defendant was then sentenced to prison for the term prescribed by law for the crime of robbery in the first degree. This sentence was made conditional. The court also sentenced defendant for the crime of robbery in the second degree, in the event the first degree verdict should be set aside.

The question thus presented is the validity of the second verdict.

██ Section 1164 of the Penal Code provides as follows: ''When the verdict given is such as the court may receive, the clerk, or if there is no clerk, the judge or justice, must record it in full upon the minutes, and if requested by any party must read it to the jury, and inquire of them whether it is their verdict. If any juror disagrees, the fact must be entered upon the minutes and the jury again sent out; but if no disagreement is expressed, the verdict is complete, and the jury must be discharged from the case.''

The words of the statute are clear and unequivocal. Nonprejudicial departures from the procedure specified by the section have been sharply criticized but held not to constitute reversible error. (Witkin, Cal. Criminal Procedure (1963) § 532, p. 545.) The error here, however, was prejudicial for the jury rendered a verdict of first degree robbery after its second consideration. In effect, the issue of the degree of the crime charged was resubmitted to the jury, and such a procedure has been held to constitute reversible error. (See *People* v. *Hughes,* 171 Cal.App.2d 362, 369-370 [340 P.2d 679].)

In *People* v. *Lee Yune Chong* (1892) 94 Cal. 379 [29 P. 776], the court was faced with the following situation: The jury found the defendant guilty of murder; this verdict was declared and recorded; the jurors were discharged and left the courtroom; the jurors went downstairs to the clerk's office and sheriff's office and mingled with the spectators; after a short time, the judge made an order vacating the order discharging the jury and the order directing the verdict to be recorded; the jurors were again convened, instructed that their verdict was informal, and that they must amend it by finding the degree of crime; the jury retired and returned a verdict of murder in the first degree.

On these facts the court held that the attempted correction of a defective verdict after recording and discharge and dispersal of the jury was void. The court sent the case back for a new trial because the verdict failed to find the degree of the crime. In reaching this conclusion the court stated:

''It is quite clear that all the proceedings by which the court reassembled the persons who had constituted the jury, and instructed them to find another verdict, and the so-called second verdict itself, were nullities. 'With the assent of the jury to the verdict as recorded, their functions with respect to the case cease, and the trial is closed'; and 'after the verdict

is received and the jury discharged, . . . the control of the jury and the court over such verdict is at an end. The court cannot alter it, nor can the jury be called to alter or amend it. As well might any other twelve men be called to alter it as the men who were jurors. The office of a juror is discharged upon the acceptance of his verdict by the court.' [Citations.] The case of *People* v. *Jenkins*, 56 Cal. 7, cited by respondent, is not in point. In that case, the court, noticing that the form of the verdict was irregular before the verdict was finally accepted or the jury discharged, directed the jury to retire and reconsider their verdict. That course was entirely proper; and this court, on the appeal, after alluding to the duty of the trial court to see to the form of the verdict, say: 'For that purpose, the court can, at any time while the jury are before it, and *under its control*, see that it is amended in form so as to meet the requirements of the law.' The language hereinbefore quoted, to the effect that the functions of the jury cease with their assent to the recorded verdict, must be construed, of course, as applying to a final assent followed by a discharge." (*People* v. *Lee Yune Chong, supra*, 94 Cal. at pp. 384-385.)

In *People* v. *Powell*, 99 CalApp.2d 178 [221 P.2d 117], the judge had preliminarily announced his intention to discharge the jury where he was laboring under the mistaken belief that the jury had not agreed on any verdict. On appeal, this court held that if the jurors are still in the box the judge may rescind the order of discharge and thereby permit correction of a mistake in the verdict. The court, in so deciding, distinguished the *Chong* case, for in *Powell* the jury was still in the box and under the control of the court. In other words, the judicial process had not ceased and the court was still exercising direct control over the jury.

The case at hand is more clearly akin to the factual situation in the *Chong* case than *Powell*. Here, a verdict was returned, read by the clerk, assented to by the jury, recorded in the minutes of the court, the jury discharged and the members thereof left the courtroom and conversed with other persons. Under the circumstances, we hold that the court had lost control over the jury for the judicial process had come to its conclusion and thus the length of time ensuing before the "reconvening" of the jury is irrelevant.

It is the rule in California, subject to narrow exceptions, that a jury may not impeach its own verdict. (Witkin, Cal. Criminal Procedure (1963) §§ 553-554, pp. 564-565.) The rule "has been justified as necessary for the preservation of

the secrecy of deliberations and for protection of the verdict against attacks corruptly induced. [Citations.]'' (Witkin, *op. cit. supra,* at p. 564.) In our view this rule is applicable here, for the integrity of the jury's verdict must be upheld.

Under the provisions of section 1164 of the Penal Code, set forth above, the verdict of robbery in the second degree was properly received and entered and the jury discharged. By that verdict defendant has been convicted of the crime of second degree robbery and acquitted of first degree robbery. The verdict was not informal but to the contrary was complete and definite. ▉ So far as the jury was concerned, their verdict ended the trial on the issue of guilt. (Cf. *People* v. *Hughes, supra,* 171 Cal.App.2d at p. 370.) That being so, it results that all proceedings thereafter were nullities, for the trial of the defendant was complete and the court had no jurisdiction to recall the jury for further proceedings. (See *People* v. *Lee Yune Chong, supra.*)

It is therefore ordered that the judgment of robbery in the second degree is affirmed. The trial court is instructed to strike from its records the judgment of robbery in the first degree.

Pierce, P. J., and Friedman, J., concurred.