[No. B040245. Second Dist., Div. Seven. Sept. 29, 1989.]

MARIO LEWIS GRAY, Petitioner, v.
THE SUPERIOR COURT OF LOS ANGELES COUNTY,
Respondent;
THE PEOPLE, Real Party in Interest.

COUNSEL

Wilbur F. Littlefield, Public Defender, Laurence M. Sarnoff, Charles Gessler, Thomas H. MacBride, and Henry J. Hall, Deputy Public Defenders, for Petitioner.

No appearance for Respondent.

Ira Reiner, District Attorney, Donald J. Kaplan and Maurice H. Oppenheim, Deputy District Attorneys, for Real Party in Interest.

OPINION

**WOODS (Fred), J.**—We find that, as in *People* v. *Bonillas* (1989) 48 Cal.3d 757 [257 Cal.Rptr. 895, 771 P.2d 844], the initial incomplete jury verdict, degree of murder not having been expressly specified, was lawfully completed by a properly admonished and promptly reconvened jury which rendered a supplemental verdict of first degree murder. Therefore the petition for a peremptory writ of mandate is denied.

### FACTUAL AND PROCEDURAL BACKGROUND

Petitioner was charged with the murder of Ruby Reed (Pen. Code, § 187, subd. (a)),[1] aggravated by four special circumstance allegations (burglary, attempted robbery, rape, and sodomy), and with her rape (§ 261, subd. (2)), sodomy (§ 286, subd. (c)), robbery (§ 211), and residential burglary (§ 459). He was additionally charged with six other residential burglaries.

On February 22, 1989, after several weeks of trial, the jury returned guilty verdicts on all the charges and found the special circumstance allegations true. The verdict on the murder charge found petitioner "guilty of MURDER, in violation of Penal Code section 187, subdivision (a), a felony, as alleged in count I of the Information." The verdict did not specify degree.

The jury was polled, the verdicts recorded, and the jury was admonished and instructed to return two days later, on February 24, to commence the penalty phase.

The next day, February 23, during a conference with counsel and petitioner, the court expressed concern over the omission of degree on the guilty

---

[1] Unless otherwise noted, all statutory references are to the Penal Code.

of murder verdict. Citing section 1157,[2] *People* v. *Marks* (1988) 45 Cal.3d 1335 [248 Cal.Rptr. 874, 756 P.2d 260], *People* v. *McDonald* (1984) 37 Cal.3d 351 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011] and other authorities petitioner moved that the murder be declared second degree as a matter of law. The court denied the motion, indicating it would reinstruct the jury and submit to them modified verdict forms.

On February 24 the court reconvened and reinstructed the jury. They were provided revised verdict forms and asked to deliberate. Twenty-three minutes later they returned a guilty first degree murder verdict.

Petitioner filed with this court a petition for writ of mandate. We stayed his penalty trial and on April 3, 1989, issued a peremptory writ of mandate ordering the trial court to enter a judgment of conviction of second degree murder. Thereafter the California Supreme Court granted real party in interest's (RPI) petition for review and on June 8, 1989, transferred the matter to this court with directions to vacate our April 3, 1989, opinion and reconsider the matter in light of *People* v. *Bonillas, supra,* 48 Cal.3d 757.

Pursuant to those directions, on June 21, 1989, we vacated our April 3, 1989, opinion.

Having had the benefit of the parties' supplemental briefs and oral argument, we now reconsider the petition in the light of *People* v. *Bonillas.*

### DISCUSSION

Since the jury did expressly find the degree of the murder in its February 24 verdict, the question is, as it was in *Bonillas,* whether the February 24 verdict was lawful.

The answer turns on the principle enunciated in *People* v. *Hendricks* (1987) 43 Cal.3d 584 [238 Cal.Rptr. 66, 737 P.2d 1350] and quoted with approval in *Bonillas*: " ' ". . . *if a complete verdict has not been rendered (Powell, Ham), or if the verdict is otherwise irregular (Chong, Grider), jurisdiction to reconvene the jury depends on whether the jury has left the court's control.* If it has, there is no jurisdiction (*Chong, Grider*); if it hasn't, the

---

[2] The section provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

jury may be reconvened *(Powell, Ham)."*'" *(People* v. *Bonillas, supra,* at p. 771.) (Original italics.)

1. *Was the February 22 verdict complete or incomplete?*

The February 22 verdict, degree of murder not having been expressly specified, was incomplete or irregular.[3] It was this identical defect, omission of degree, that caused *Bonillas* to characterize the *Chong* verdict as "irregular" (See fn. 3, *ante*) and the *Hughes* and *Bonillas* verdicts as "incomplete." (See fn. 3, *ante*.)

 Petitioner, however, argues that the February 22 verdict was complete since, unlike *Bonillas,* the instant jury was never instructed that it must return a verdict specifying the degree of the offense. Petitioner relies upon the following language in *Bonillas*: "Because the instructions required the jury to specify the degree of the murder and the verdict returned failed to do so, the verdict was incomplete under the law and the instructions." *(People* v. *Bonillas, supra,* 48 Cal.3d at p. 769.)

Not only is this relied upon sentence from *Bonillas* not quite authority for petitioner's assertion but in context is even less so. The full *Bonillas* paragraph reads: "In the first instance, the jury was instructed that if it found defendant guilty of murder it was required to find the degree of the murder. However, for some unknown reason it was not furnished a verdict form by which to specify the degree, and the guilty verdict it did return on January 27 specified only that defendant was guilty of murder 'as charged in the information.' Because the instructions required the jury to specify the degree of the murder and the verdict returned failed to do so, the verdict was incomplete under the law and the instructions." (48 Cal.3d at p. 769.)[4]

Thus, according to *Bonillas,* the jury was instructed it was to *"find"* degree and "to specify the degree" but *Bonillas* does not state, contrary to petitioner's assertion, that the jury was instructed to specify degree *in its verdict*. The footnoted language, referring to related instructions, also fails to state that the jury was instructed to specify degree *in its verdict*.

"The jury was instructed it should return a finding on the burglary-murder special circumstance only if it found defendant guilty of first degree

---

[3] *Bonillas* uses the terms "incomplete" and "irregular" inconsistently. E.g., the murder verdict in *People* v. *Lee Yune Chong* (1892) 94 Cal. 379 [29 P. 776] which failed to specify degree is characterized as "irregular" *(People* v. *Bonillas, supra,* at p. 771) but the murder verdicts in *Bonillas, McDonald,* and *People* v. *Hughes* (1959) 171 Cal.App.2d 362 [340 P.2d 679] which similarly failed to specify degree are characterized as "incomplete." *(People* v. *Bonillas, supra,* 48 Cal.3d at pp. 769, 774, 775-776.)

[4] *Bonillas* only paraphrases not quotes the trial court's jury instructions.

murder, and, of course, it did return a verdict of true as to the burglary-murder special circumstance." (48 Cal.3d at p. 769, fn. 4.)

In the instant case, although the trial judge did not explicitly instruct the jury that if it found petitioner guilty of murder it should specify first degree in its verdict, it did instruct them as follows: "Second, you must apply the law that I state to you to the facts as you determine them. And in this way arrive at your verdict and any *finding* you are instructed to include in your verdict." (Italics added.)

"If you *find* the defendant in this case guilty of murder in the first degree, you must then determine if one or more of the following special circumstances are true or not true: Burglary, robbery, rape and sodomy." (Italics added.)

"Your *finding* as to each count must be stated in a separate verdict." (Italics added.)

When linked, these instructions informed the jury that their determination defendant was guilty of first degree murder was a *finding* and that a *finding* must be stated in a (separate) verdict. Of course, as in *Bonillas,* the verdict form provided to the jury neither stated "first degree" nor provided any box to check or other cue enabling the jury to carry out the court's instructions and satisfy the law's requirements. (§ 1157.) (See fn. 2, *ante.*)

Thus, contrary to petitioner's argument, the instant instructions are comparable to those of *Bonillas.*

But even if the instant instructions were not comparable to *Bonillas* the verdict would still have been incomplete or irregular. For although *Bonillas* notes that the verdict was "incomplete under . . . the instructions", it is clear that such instructions are not a sine qua non to an incomplete verdict.

*Bonillas* states that "the verdict was incomplete *under the law.* and the instructions" (*People* v. *Bonillas, supra,* 48 Cal.3d at p. 769, italics added.) Thus, it is clear, there are two causes for the verdict being incomplete: the law and the instructions.

What *Bonillas* says regarding its trial court applies equally to the trial court in this case: "There is no question that, had the court noted the omission at once and required the jury to retire at that time to complete its verdict, the verdict fixing the degree of the murder would have been lawful." (48 Cal.3d at p. 769.)

The authority for such remedial action by a trial court, section 1161,[5] does not depend upon the instructions to the jury, complete or incomplete, clear and specific or unclear and unspecific, but upon the verdict. "When there is a *verdict* of conviction, *in which* it appears to the Court that the jury have mistaken the law . . ." (§ 1161, italics added) the court is empowered to rectify the mistake.

As *Bonillas* went on to state, making clear that trial court authority to correct a defective verdict did *not* depend upon the court's instructions, "[t]here are numerous decisions applying this principle to jury verdicts incomplete or inconsistent with the court's instructions." (48 Cal.3d at p. 769.) In its seven illustrations of this principle, *Bonillas* makes no distinction between inconsistent verdict cases and incomplete verdict cases. (*Id.* at pp. 769-770.)

Later in its opinion, again without dependence upon the court's instructions, *Bonillas* remarked, "[i]n criminal as well as civil cases '[i]t is the duty of a Court to look after the form and substance of a verdict, so as to prevent a doubtful or insufficient finding from passing into the records of the Court; for that purpose the Court can, *at any time while the jury are before it, and under its control,* see that it is amended in form as to meet the requirements of the law.'" (48 Cal.3d at p. 772.) (Italics added by *Bonillas*.)

Moreover, in its discussion of *Grider* (*People* v. *Grider* (1966) 246 Cal.App.2d 149, [54 Cal.Rptr. 497]) and *Chong, supra,* 94 Cal. 379, both cited as examples of irregular, i.e. incomplete, verdict cases (48 Cal.3d at p. 771), there is no suggestion that the jury failed to heed the court's instructions. (*Id.* at p. 772, fn. 6.)

Finally, there is the explication of *People* v. *Hughes* (1959) 171 Cal.App.2d 362 [340 P.2d 679]. In *Hughes,* according to *Bonillas,* the jury did precisely what the court instructed it to do. "[T]he jury returned a verdict form finding the defendant guilty of murder 'as charged.' This was the form the jury had been instructed to utilize if they found the defendant guilty of first degree murder." (48 Cal.3d at p. 773.) Notwithstanding this fidelity to the court's instructions, the verdict, which failed to specify the degree of murder, was incomplete and remained rectifiable until the moment the jury began to receive penalty phase evidence. (*Id.* at p. 774.) *Bonillas* characterizes the *Hughes* court's statement that the verdict was "complete" when received and the jury "released" (although it was to return for the penalty phase) as "erroneous." (*Ibid.*) *Bonillas* explained that "the notion that a verdict is 'complete' or 'that the functions of a jury cease

---

[5] It provides in pertinent part: "When there is a verdict of conviction, in which it appears to the Court that the jury have mistaken the law, the Court may explain the reason for that opinion and direct the jury to reconsider their verdict, and if, after the reconsideration, they return the same verdict, it must be entered; . . ."

with their assent to the recorded verdict, must be construed, of course, as applying to a *final assent followed by a discharge.*' " (*Ibid.*) (Italics added by *Bonillas.*)

Thus, even if the instant jury followed the court's instructions in returning their guilty of murder verdict (no degree specified), as the *Hughes* jury certainly followed the instructions of its trial judge, the verdict (as *Bonillas* says of the *Hughes* verdict) was incomplete.

2. *Sufficiency of the court's admonition.*

As *Bonillas* indicates, the verdict being incomplete, "jurisdiction to reconvene the jury depends on whether the jury has left the court's control." (48 Cal.3d at p. 771.) One factor in assessing retention of court control is the court's admonition to the jury. In *Bonillas* "the court, after receiving these verdicts, admonished the jurors not to discuss the case among themselves or with anyone, and to refrain from reading anything about the case in the newspapers." (*Bonillas, supra,* 48 Cal.3d at p. 768.)

Petitioner claims that the admonition in the instant case was deficient because unlike *Bonillas* they were not "specifically instructed that they [were] still jurors in the case." (48 Cal.3d at p. 773.)

The trial court admonished the jurors as follows: "THE COURT: Now you are under still the obligation not to discuss this case because some of the things that you have already heard will be things that may also be discussed at the penalty phase. . . . So you're admonished again not to discuss the case with each other or anybody else until now we go into the— we go into the penalty phase. All during that you are not to discuss the case even though you had discussed it before, but now we are in for an entirely different purpose. So don't discuss anymore until again you are instructed and go back and deliberate on that aspect of it. Counsel wish me to instruct the jury to anything in particular more than I have done?

"MR. MONAGHAN [the prosecutor]: No, your honor.

"MR. MACBRIDE [defense counsel]: No, your honor.

"THE COURT: All right. Then Friday morning at 9:15. Thank you. The day after tomorrow."

It is unmistakable from the court's admonition that the jurors were told and would have understood that "they were still jurors in the case." Unlike a discharged jury, this jury, under the court's admonition, was not free to

"[throw] off their characters as jurors" nor "free from any official obligation." (*People* v. *Bonillas, supra,* 48 Cal.3d at p. 771.)

Petitioner's claim is not well founded.[6]

Petitioner makes a related and more abstruse argument, viz., that the instant jury was told it had completed its job regarding the guilt phase in contrast to *Bonillas* "where it was made clear to the jury that its duties were not completed." The distinction eludes us. Both juries, the instant one on February 22 and *Bonillas* on January 27, were made to understand that the guilt phase was over, a penalty phase would soon commence, and they were temporarily excused not discharged. Any syntactical discrepancy in communicating this identical information is without significance.

3. *Reconvening the jury.*

Petitioner draws the following distinction: "In *Bonillas,* the jury was specially reconvened for the purpose of 'correcting' the verdict" while "[i]n the case at bench, the jury was asked to 'complete' its guilt phase verdict at the commencement of the penalty phase."

Whether or not the trial court retained jurisdiction to have the jury rectify its omission of degree from a guilty of murder verdict does *not* depend upon which word is used: "correct" or "complete." The purpose was the same: to *correct* a deficient verdict by adding a specification of degree and thus to make it *complete.*

Similarly, any distinction between the reassembling of the *Bonillas* jury "even before penalty phase proceedings were scheduled to commence" (*People* v. *Bonillas, supra,* 48 Cal.3d at p. 776) and the reconvening of the instant jury on the day penalty phase proceedings were scheduled to commence, is without significance.

It was mere happenstance that the *Bonillas* trial court, after receiving the guilty verdict on January 27, failed to schedule a precise date for the commencement of the penalty phase. Having failed to schedule such a date, it then, on January 31, reassembled the jurors to correct and complete their

---

[6] Petitioner does *not* contend that the court's admonition was deficient because it omitted instructing the jurors "to refrain from reading anything about the case in the newspapers." (*Bonillas, supra,* 48 Cal.3d at p. 768.) This caution, although prudent, is not mandated by section 1122. Moreover the jury was outside the court's presence for only one day, having been excused on February 22 to return February 24. By contrast the *Bonillas* jury was excused January 27 and not reconvened until January 31. Additionally, the trial court specifically asked counsel if they wished additional jury admonitions and defense counsel said no. We are satisfied the court's admonition, under these circumstances, was sufficient.

verdict. But the nature and substance of the January 31 *Bonillas* proceedings were identical to those at bench on February 24. What was critical was the absence of "tainting, by receipt of penalty phase evidence." (48 Cal.3d at p. 776.)

4. *Correction and completion of the verdict.*

On February 24 the court instructed the jurors as follows: "The verdict forms originally given you concerning count 1 should have specified murder in the first degree instead of simply murder. [¶] Revised forms of verdicts as to count 1 will now be given [to] you specifying murder in the first degree. [¶] Please return to the jury room, deliberate, and render your verdict as to count 1 using the revised verdict forms."

■ Petitioner contends that by so instructing the jury the court informed them "it must convict petitioner of first degree murder." This, petitioner argues, constitutes a tainting "outside influence" prohibited by *Bonillas*.

Petitioner's premise is mistaken and his argument amiss.

The trial court, rather than telling the jury they "must convict petitioner of first degree murder," told the jury that the original *verdict forms* "should have specified murder in the first degree." After informing them they would be provided revised forms of verdicts (obviously referring to a guilty of first degree murder verdict form and a not guilty of first degree murder verdict form) the court instructed them to "deliberate and render your verdict."

Thus, the court merely iterated its original instructions providing a jury choice of guilty first degree murder or not guilty. This was the sole purpose of the jury reconvening, and the court's instruction, under *Bonillas,* was neither a taint nor an outside influence.[7]

5. *Retroactivity of Bonillas.*

■ Finally petitioner urges, in an argument noteworthy for its imaginativeness, that *Bonillas* cannot be applied retroactively to this case. In other words, although the California Supreme Court directed this court to reconsider the instant case in the light of *Bonillas* we may not do so. We find

---

[7] "There are numerous decisions applying this principle to jury verdicts incomplete or inconsistent with the court's instructions. (*People* v. *Scott, supra,* 53 Cal.2d 558, 561-562 [2 Cal.Rptr. 274, 348 P.2d 882] [where evidence showed and jury instructed only on first degree robbery or innocence, trial court properly refused to accept verdicts contrary to law and instructions of second degree robbery, and ordered jury to resume further deliberations (citing § 1161)]." (*People* v. *Bonillas, supra,* 48 Cal.3d at p. 769.)

nothing in *Bonillas* suggesting such an anomalous result and decline to disregard the clear directions of the California Supreme Court.

## SUMMARY

 Finally, the *Bonillas* summary aptly describes the instant case: "Where, as here, further proceedings are to take place, the jury has not been discharged, the jurors have been specifically instructed that they are still jurors in the case, they have been admonished not to discuss the case with anyone nor to permit anyone to discuss the case with them, and they have been directed not to read anything about the case, [see fn. 6, *ante*] the jurors have not thrown off their character as jurors nor entered the outside world freed of the admonitions and obligations shielding their thought processes from outside influences. Clearly, the jury here remained within the court's control (see *People v. Lee Yune Chong, supra,* 94 Cal. 379, 384; *People v. Thornton, supra,* 155 Cal.App.3d 845, 856 [202 Cal.Rptr. 448]), their verdict was incomplete, and the court was authorized to reconvene the jury to complete its verdict." (*People v. Bonillas, supra,* 48 Cal.3d at p. 773.)

## DISPOSITION

The petition for a peremptory writ of mandate is denied.

Lillie, P. J., concurred.

**JOHNSON, J.**—I respectfully dissent. This case is before us for reconsideration in light of the recent Supreme Court decision in *People v. Bonillas* (1989) 48 Cal.3d 757 [257 Cal.Rptr. 895, 771 P.2d 844]. Properly considered, I do not interpret that decision to control under these facts. The crucial difference is that here, the jury was not properly instructed that if it found the defendant guilty of murder it must also specify degree. Hence, the verdict was not "incomplete under the . . . instructions." (*Id.* at p. 769.) Since the February 22 verdict was complete, I would find the defendant guilty of second degree murder as a matter of law under the settled and prevailing interpretation of section 1157 of the Penal Code. (*Bonillas, supra,* 48 Cal.3d at p. 804 (conc. opn. of Arguelles, J.).)[1]

An examination of pertinent recent decisions in this area is illuminating. In *People v. Marks* (1988) 45 Cal.3d 1335 [248 Cal.Rptr. 874, 756 P.2d

---

[1] Penal Code section 1157 provides: "Whenever a defendant is convicted of a crime or attempt to commit a crime which is distinguished into degrees, the jury, or the court if a jury trial is waived, must find the degree of the crime or attempted crime of which he is guilty. Upon the failure of the jury or the court to so determine, the degree of the crime or attempted crime of which the defendant is guilty, shall be deemed to be of the lesser degree."

260], the defendant was charged with murder and with two special circumstances: lying in wait and intentional murder for financial gain. The trial court failed to conduct a competency hearing after specifically questioning the defendant's competency. The case was tried before a jury which found him guilty of murder—without specifying degree—and found one of the special circumstances to be true. The Supreme Court held the trial court committed reversible error by failing to hold the competency hearing and reversed on that basis. In addition, the court also found other reversible errors occurred at trial. The Supreme Court explained: "The jury's verdict did not specify the degree of murder of which defendant was convicted. Indeed, the trial court inexplicably denied defendant's requested instruction, CALJIC No. 8.70, that the jury must specify the degree of murder. Section 1157, whose predecessor statute was enacted more than a century ago, requires that a jury 'must find the degree of crime or attempted crime of which he [the defendant] is guilty' We have consistently held that section 1157 means that a jury must *explicitly* specify *in its verdict* the degree of the crime for which it convicts the defendant. (*People* v. *McDonald* (1984) 37 Cal.3d 351, 379-383 [208 Cal.Rptr. 236, 690 P.2d 709, 46 A.L.R.4th 1011].)" (*People* v. *Marks, supra,* 45 Cal.3d 1335, 1344, italics in original, italics added.)

*People* v. *McDonald, supra,* 37 Cal.3d 351, was decided only four years before *Marks* and was the precedent on which the *Marks* court principally relied. In *McDonald,* the defendant was charged with robbery and murder, with a special circumstance alleging he committed the murder while in the commission of robbery or attempted robbery. The People's only theory was felony murder. The jury was instructed solely on first degree murder and it returned a verdict of guilty "as charged in ... the information." But the trial court failed to instruct the jury it must specify the degree of murder and the jury indeed failed to specify degree. (*McDonald, supra,* 37 Cal.3d at p. 379.) The jury was polled and the verdict was recorded.[2]

The trial court realized its error in failing to require the jury to specify the degree of murder. Three and a half weeks later when the jury was reconvened for the penalty phase, the court submitted a new guilty verdict form which required the jury to find "'murder of the first degree to be true/not true.'" (*McDonald, supra,* 37 Cal.3d at p. 379.) The jury deliberated briefly and returned a finding of first degree murder.

[2] The jury found the special circumstance true, but nevertheless acquitted him of the substantive charge of robbery. In a footnote, the Supreme Court explained the apparent inconsistency in the verdict by the fact that it was not instructed it could acquit on the robbery charge but convict for attempted robbery. Hence the jury apparently based the special circumstance verdict on a finding of attempted robbery, as it properly could. (*McDonald, supra,* 37 Cal.3d at p. 378, fn. 25.)

The Supreme Court refused to accept this belated specification of degree. The court held Penal Code section 1157 required the guilty verdict to be second degree murder as a matter of law despite the jury's implied finding of first degree murder. The court pointed out: "[T]hroughout its history the statute has been applied in cases in which the 'failure' of the jury to determine the degree of crime 'consisted in an omission to perform that function because of mistake or inadvertence or in circumstances suggesting an intended act of leniency.' [Citation.] The rule is thus firmly established that the statute applies whenever the jury neglects to explicitly specify the degree of the crime." (*McDonald, supra,* 37 Cal.3d at p. 381; quoting *People* v. *Dixon* (1979) 24 Cal.3d 43, 51-52 [154 Cal.Rptr. 236, 592 P.2d 752].)

The court went on to consider other decisions and summed up the case law stating: "These decisions illustrate the rule that the statute applies to reduce the degree even in situations in which the jury's intent to convict of the greater degree is demonstrated by its other actions, i.e., by signing a subsequent verdict form (*Hughes*) or making a finding on an enhancement (*Beamon*). Contrary to respondent's assertion, the key is not whether the 'true intent' of the jury can be gleaned from circumstances outside the verdict form itself; instead, application of the statute turns only on whether the jury specified the degree in the verdict form. In the present case the verdict form failed to specify the degree; in the absence of such specification, the jury's finding on the special circumstance allegation is irrelevant and the conviction must be deemed second degree murder as a matter of law pursuant to the unambiguous language of section 1157." (*McDonald, supra,* 37 Cal.3d at p. 382.)

The court next rejected the prosecutor's argument that because the jury was only instructed on first degree murder and was not instructed on the lesser included offense of second degree murder, any verdict of guilt on the murder charge could only be first degree: "First, the terms of the statute are unambiguous. No special exception is created for the situation presented by this case; had the Legislature chosen to make section 1157 inapplicable to cases in which the jury was instructed on only one degree of a crime, it could easily have so provided . . . . [The statute] 'establishes a rule to which there is to be no exception, and the *Courts have no authority to create an exception* when the statute makes none.'" (*McDonald, supra,* 37 Cal.3d at p. 382; quoting *People* v. *Campbell* (1870) 40 Cal. 129, 138, italics added.)

The court then held because the jury failed to specify degree in its verdict, and a finding of degree could not be implied, any attempt to "correct" the verdict by resubmission of the question to the jury was inappropriate. "[I]t must be deemed as a matter of law that defendant was convicted of second

degree murder. (See also *People* v. *Johns* (1983) 145 Cal.App.3d 281, 294-295 [193 Cal.Rptr. 182].)" (*McDonald, supra,* 37 Cal.3d at p. 383.)

In *Bonillas, supra,* 48 Cal.3d 757,[3] the question for resolution as framed by the court was whether, *under the circumstances of that case,* the court was authorized to reconvene the jury for the purpose of correcting the omission and completing its verdict by specifying the degree of the murder. The defendant was charged with murder and burglary with a special circumstance allegation of murder in the commission of a burglary. The jury was instructed "that if it found the defendant guilty of murder it was *required to find the degree of murder.*" (*Bonillas, supra,* 48 Cal.3d. at p. 769, italics added.) The jury, however, was not furnished a verdict form by which to specify degree. The verdict the jury did return specified only that the defendant was "guilty of murder 'as charged in the information.'" (*Ibid.*) The jury was then excused until February 2 when they were to call in to receive instructions on when to reconvene for the penalty phase. The next day, Friday, January 28, the defense brought to the court's attention the jury's failure to specify the degree of murder. On Monday, January 31, the court reconvened the jury, denied the defendant's motion that the degree be fixed at second degree pursuant to Penal Code section 1157, and instructed the jury to reconsider the question of degree. The jury was provided with both first degree and second degree verdict forms and the jury promptly returned with a verdict of first degree.

The Supreme Court held that the January 31 verdict was lawful because: "*In the first instance, the jury was instructed that if it found defendant guilty of murder it was required to find the degree of the murder.* However, for some unknown reason it was not furnished a verdict form by which to specify the degree, and the guilty verdict it did return on January 27 specified only that defendant was guilty of murder 'as charged in the information.' *Because the instructions required the jury to specify the degree of the murder and the verdict returned failed to do so, the verdict was incomplete under the law and the instructions.*" (48 Cal.3d at p. 769, citations omitted, italics added.)

The court then held that under the circumstances of the case (a finding that the initial verdict was incomplete, further proceedings were to take place, jury had not been discharged and had been specifically admonished not to discuss the case) the trial court was authorized to reconvene the jury "for the purpose of correcting the omission and completing its verdict. . . ." (48 Cal.3d at p. 770.)

---

[3] Both the *Marks* and *McDonald* decisions were cited with approval in *Bonillas, supra,* 48 Cal.3d 757.

There is an obvious and critical factual distinction between this case and *Bonillas*. In *Bonillas,* by not specifying the degree of murder as instructed, the jury had not done all that it was asked to do. The jury's failure to perform all the tasks asked of it under the instructions rendered the verdict incomplete in the opinion of the court. Once the threshold finding is made that the jury verdict is incomplete, only then does an analysis of the court's control over the jury become crucial to a determination that the trial court had authority to reconvene the jury.

But those circumstances are not present in this case. Here the jury was never instructed that it had to specifically make a finding of the degree of murder if it found the defendant guilty of murder. Nor was the jury instructed that alternate findings of degree were possible on the murder count.[4] Since the jury was not told it needed to specify the degree of murder if it found the defendant guilty of murder, and since the verdict forms provided did not specify degree,[5] the jury did all that it was instructed to by returning a general verdict of guilty. Because the jury did all that was asked of it, i.e., its verdict stated everything the jurors were told they should state under the instructions, the verdict is complete. From the jurors' viewpoint, there was no omission and the February 22 verdict was complete and the guilt phase terminated when they assented to the verdict and the verdict was accepted by the court and recorded pursuant to Penal Code section 1164.[6]

---

[4] The court denied the defense's request for a second degree felony murder instruction based on the sodomy count although the prosecution admitted the information as pled would not automatically make it first degree as a matter of law but that it could be murder of the second degree.

[5] The majority opinion concedes the trial court "did not explicitly instruct the jury that if it found petitioner guilty of murder it should specify first degree. . . ." (Maj. opn., *ante*, at p. 550.) However, the majority seeks to avoid the logical consequence of that failure by linking together unconnected pieces from various parts of the court's instructions. Yet none of these instructions tells the jury it is to make a finding which specifies the degree. Indeed the quoted instructions tell the jury they are only required to arrive at a verdict "and any finding you are *instructed to include* in your verdict." (In no way can the "[i]f you find the defendant guilty of murder in the first degree. . ." clause buried in the instructions relating to special circumstances be tortured into an *instruction to include* a finding as to degree in the verdict.) Since they were not instructed to include a finding of degree, the jurors in this case complied fully with the requirement they come back with all the findings they had been instructed to include.

[6] Penal Code section 1164 provides in pertinent part: "When the verdict is receivable by the Court, the clerk . . . shall record it in full upon the minutes, and if requested by any party shall read it to the jury, and inquire of them whether it is their verdict . . . . [I]f no disagreement is expressed, the verdict is complete, and the jury shall . . . be discharged from the case."

In sum, because here the initial jury verdict *was* complete, *Bonillas's* guidance as to when a court is authorized to reconvene the jury to correct an incomplete verdict is inapplicable.[7]

*McDonald, supra,* 37 Cal.3d 351, by contrast, is both factually and legally indistinguishable from the case at bench. Based on the identity of facts, the resolution of this case should be no different. Here as in *McDonald* the defendant was charged with felony murder with special circumstance allegations. As in *McDonald* the jury was instructed solely on first degree murder. Again, as in *McDonald* there was *no instruction requiring the jury to specify degree* nor did the verdict form provide for the specification of degree. In both cases the jury found the special circumstances true and found the defendant guilty of "murder as charged . . . in the information." Here as in *McDonald,* the jury was polled, no disagreement was noted and the verdict was recorded. In both cases the jury was reconvened several days later at which time the trial court informed the jurors the verdict forms "should have specified murder in the first degree instead of simply murder. Revised forms of verdicts as to count I will now be given you specifying murder in the first degree." As in *McDonald* the jurors promptly returned a verdict of first degree murder.

Thus, the instant case is like *McDonald* and unlike *Bonillas.* Here as in *McDonald* the court failed to instruct the jury it was required to specify the degree. Consequently unlike *Bonillas* the jury did all that was required of it and the original verdict was complete. Under the authority of *McDonald,* any attempt to correct the omission by resubmitting it to the jury is unavailing. According to *McDonald,* the express terms of the statute operate in this instance to render the original jury verdict second degree as a matter of law.

---

[7] The rule cited by the majority as to when the trial court may reconvene the jury can be better understood with reference to the cases cited therein. A trial court is empowered to reconvene the jury for further deliberations when the error is discovered while the jurors are still in the box. (*People* v. *Powell* (1950) 99 Cal.App.2d 178 [221 P.2d 117]; *People* v. *Ham* (1970) 7 Cal.App.3d 768 [86 Cal.Rptr. 906] [the original verdicts in these cases have been characterized as "incomplete"].)

However, if the error was not discovered until after the verdict was acknowledged, recorded and the jury had left the box, reconvening the jury was held to be invalid due to the possible taint on the jury from outside influences. The Supreme Court referred to such verdicts as "irregular." (*People* v. *Hendricks* (1987) 43 Cal.3d 584 [238 Cal.Rptr. 66, 737 P.2d 1350] [court without jurisdiction to reempanel original jurors to sit in second sanity hearing after dismissal from the guilt phase five months earlier]; *People* v. *Hughes* (1959) 171 Cal.App.2d 362 [340 P.2d 679] [although jury twice instructed as to the various degrees of murder, court's attempt to reconvene the jury to complete the verdict by specifying degree held invalid after penalty phase evidence had been received].) This is true even though the jury had only been dismissed for minutes and were still present in the court house. (*People* v. *Grider* (1966) 246 Cal.App.2d 149 [54 Cal.Rptr. 497]; *People* v. *Lee Yung Chong* (1892) 94 Cal. 379 [29 P. 776].)

Prior to 1949, Penal Code section 1157 required the jury to determine degree, but did not specify the consequences of its failure to do so. In numerous cases it was held that such failure required that the verdict be set aside and a new trial held. See, e.g., *People* v. *Lee Yung Chong, supra,* 94 Cal. 379. The effect of the 1949 amendments, automatically fixing the degree of the crime at second degree, reduced the impact of a failure to specify degree. The Legislature, however, retained the mandatory provision that the jury must specify degree.

I find merit in the suggestion Presiding Justice Lillie offered in her concurring opinion when this court initially considered this writ and before the Supreme Court remanded it to us. Presiding Justice Lillie urged the Legislature to give serious consideration to amending Penal Code section 1157 to make it easier for a trial court to correct this type of error. While I agree the Legislature should consider rewriting the statute, I do not agree it is appropriate for this court to rewrite the statute, and along the way overturn over 100 years of precedent.

Courts of this state have consistently held Penal Code section 1157 requires the degree be explicitly specified by the jury's initial, accepted verdict.[8] *Bonillas* carved out a narrow, justifiable exception to Penal Code section 1157 where the jury has not yet completed the duties the trial court instructed it to perform. The majority opinion in the instant case, however, opens up an exception which nearly swallows the statute, at least in capital cases. Completed verdicts can be reopened for the giving of new instructions and the specification of degree at any time until the jury has been formally discharged from the case. This means jurors who have already committed themselves to finding the defendant guilty of murder and thought they were through with their deliberations on the issue of guilt can suddenly be told hours, days or weeks later they now must go a step further and find the defendant guilty of murder in the first degree.

The Legislature may sometime elect to sanction this form of sequential verdict. But the existing versions of Penal Code sections 1157 and 1164 do not allow a defendant's guilt of a single crime to be decided in stages, a

---

[8] See, e.g., *People* v. *Dixon, supra,* 24 Cal.3d 43, 51-52; *People* v. *Flores* (1974) 12 Cal.3d 85, 94-95 [115 Cal.Rptr. 225, 524 P.2d 353]; *People* v. *Beamon* (1973) 8 Cal.3d 625, 629, footnote 2 [105 Cal.Rptr. 681, 504 P.2d 905]; *People* v. *Thomas* (1978) 84 Cal.App.3d 281 [148 Cal.Rptr. 532]; *People* v. *Baeske* (1976) 58 Cal.App.3d 775, 778, footnote 1 [130 Cal.Rptr. 35]; *People* v. *Doran* (1974) 36 Cal.App.3d 592 [111 Cal.Rptr. 793]; *People* v. *Cox* (1973) 33 Cal.App.3d 378, 381-382 [109 Cal.Rptr. 43]; *People* v. *Fernandez* (1963) 222 Cal.App.2d 760, 769 [35 Cal.Rptr. 370]; *People* v. *Hughes* (1959) 171 Cal.App.2d 362, 369-370 [340 P.2d 679]; *In re Candelario* (1970) 3 Cal.3d 702, 706, footnote 2 [91 Cal.Rptr. 497, 477 P.2d 729]; *People* v. *McDonald, supra,* 37 Cal.3d 351, 379-383.

degree at a time. Nor do I believe this court should undertake on its own such a drastic revision of the settled law of this state.

For the foregoing reasons, I would have granted the writ in this case.

Petitioner's application for review by the Supreme Court was denied January 4, 1990. Mosk, J., was of the opinion that the application should be granted.